CARL W. SERMUKS *vs.* AUTOMATIC ALUMINUM HEEL COMPANY.

Suffolk. March 26, April 20, 1926. — June 28, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Contract*, Construction, Performance and breach, In writing, Modification. *Damages*, For breach of contract. *Evidence*, Extrinsic affecting writing.

An employee of a corporation manufacturing aluminum heels made with it in 1920 a contract in writing "to use his best endeavor to invent and perfect a new die casting machine for making aluminum heels," the employer agreeing that, if the employee was "successful in perfecting a die casting machine as aforesaid," it would "accept same, and use it in the manufacture of its entire production of aluminum heels" and pay the employee a certain "royalty for each pair of aluminum heels manufactured by" it during the period of five years from the date of the contract. The employee ceased to be employed by the corporation in 1921. The corporation contended that he failed to invent and perfect the machine called for by the contract, and refused to pay him any royalty. The employee in 1921 brought an action upon the contract. At the trial of the action, it appeared that the corporation went out of business in 1922. The evidence was conflicting on the issues, whether the plaintiff had been successful in perfecting the machine required, whether, if the machine failed to work, such failure was due to a failure by the defendant to furnish him a proper pyrometer and air compressor, and whether the parties had modified the contract so that the defendant had agreed to furnish all the materials necessary for the construction of the machine. The jury found for the plaintiff. *Held,* that

(1) Although the contract in writing contained no specific provision that the defendant should furnish all the materials necessary for the construction of the machine, evidence was admissible to show an oral modification to that effect;

(2) The evidence warranted a finding that, after the machine had been built in conformity to the contract, the defendant refused to use it and repudiated the contract.

It appearing from the finding of the jury on conflicting evidence that the plaintiff had fully performed all that was to be performed by him under the contract above described as modified by the oral agreement, that the defendant had gone out of business in the second of the five years covered by the contract and had repudiated the contract in its first year, the plaintiff might maintain his action although it was brought in the first year of the contract and might recover as damages not only royalties based on heels manufactured by the corporation before the date of the writ, but also all royalties accruing on the entire output of heels by the defendant until it ceased doing business.

CONTRACT upon the agreement in writing dated August 4, 1920, set out in the opinion. Writ dated March 21, 1921.

In the Superior Court, the action was tried before *Keating*, J. It appeared that the defendant ceased to do business on October 19, 1922. Material evidence is stated in the opinion. At the close of the evidence, the defendant moved that a verdict in its favor be ordered. The motion was denied. The parties made the agreement which is stated at the end of the opinion. The defendant asked for and the judge refused to give the following rulings:

"1. Upon all the evidence, the verdict should be for the defendant.

"2. The contract, being in writing and its terms not in dispute and its meaning plain, clear and unequivocal, the construction thereof is a matter of law for the court.

"3. The construction of the contract in this case is to be determined from the language used therein, which is not to be varied, modified, controlled, or affected by the acts or conduct of the parties, since its meaning is plain and certain upon its face."

"5. The machine assembled by the plaintiff is not a new machine in the sense in which the word 'new' is used in the contract.

"6. The machine assembled by the plaintiff was not an invention by him.

"7. The devices upon which letters patent of the United States had previously been granted respecting devices invented by others prior to the contract in the case at bar included substantially all of the features of the plaintiff's machine, and the same does not constitute an invention by him.

"8. The mere separation of the parts in the air conduit from the compressor to the pressure chamber does not constitute a material variation and render the plaintiff's machine an invention. Such a separation is of no mechanical advantage and does not constitute an invention of a new machine.

"9. Under the terms of the agreement, the defendant was not bound to furnish the plaintiff with the means of inventing and perfecting the machine.

"10. The defendant was not bound to furnish a suitable or even any air compressor for the furnishing of means by which to operate the plaintiff's machine.

"11. The defendant was not bound to furnish a pyrometer to the plaintiff for his use in the production of the machine.

"12. The conduct of the defendant in purchasing and providing for the plaintiff one or more air compressors does not affect or vary the construction of the written agreement, and does not impose upon the defendant any further obligation to continue to furnish the plaintiff with the means of inventing and perfecting the machine, and there was no obligation on the part of the defendant, upon the plaintiff's demand, to furnish him with another or different air compressor.

"13. Even if the defendant promised the plaintiff to produce another and more powerful compressor, there was no consideration therefor, and the defendant was not bound thereby."

"15. The failure or refusal on the part of the defendant to furnish the plaintiff with a suitable compressor, which was necessary in order to make the plaintiff's machine operate effectively does not constitute or is not equivalent to a performance by the plaintiff of the condition precedent to the defendant's liability, to wit: The invention of a new machine and perfecting the same.

"16. If the machine as produced by the plaintiff was imperfect because not supplied with a sufficient compressor, or because it contained only a die capable of producing one heel at a time, or because it could not be operated safely, efficiently or otherwise so as to produce aluminum heels of commercial quality and quantity, the plaintiff cannot recover.

"17. The compressor was an essential part of the machine and if no suitable and sufficient compressor was supplied, the plaintiff cannot recover.

"18. If the installation of a sufficient air compressor was necessary in order to make the machine operate effectively, and this was not done, the plaintiff cannot recover.

"19. The plaintiff cannot recover for this action for royalties accruing after the date of the writ herein."

There was a verdict for the plaintiff in the sum of $3,722.40. The defendant alleged exceptions.

Before this court the defendant contended that its motion for the ordering of a verdict in its favor should have been allowed, that the requests for rulings above set out should have been given, and that in any event the plaintiff should "recover royalties only upon heels manufactured up to the date of the writ, and therefore judgment can in no event be entered for the plaintiff except in the amount of one dollar."

*E. Field,* for the defendant.

*J. C. Johnston, W. H. Wood, & J. F. Meagher,* for the plaintiff, submitted a brief.

CROSBY, J.   On March 15, 1920, the plaintiff entered into a contract with the defendant by the terms of which he agreed to work for the term of one year from date as superintendent of the defendant's die casting department at a salary of $75 a week, payable weekly, and a bonus of $75 for each die casting die made during that period. The plaintiff worked under that contract until August 4, 1920, when the parties entered into another contract in writing, the essential parts of which are as follows:

"1. The parties to this agreement have already entered into a contract of employment of the said party of the first part, by the party of the second part, dated March 15, 1920, which contract is hereby confirmed.

"2. In the course of his employment, the party of the first part agrees to use his best endeavor to invent and perfect a new die-casting machine for making aluminum heels.

"3. If the party of the first part is successful in perfecting a die-casting machine as aforesaid, the party of the second part agrees to accept same, and use it in the manufacture of its entire product of aluminum heels.

"4. The party of the second part agrees to pay as a royalty for his invention, provided same is successful, one-quarter of one cent royalty for each pair of aluminum heels manufactured by the party of the second part during the period of five years from the date of this agreement, subject to conditions stated in paragraph five of this agreement.

"5. It is further agreed that whenever the royalty aforesaid does not equal seventy-five (75) dollars per week, the salary of the party of the first part, as provided in contract of March 15, 1920, no royalty shall be paid, but that whenever the royalty exceeds seventy-five (75) dollars per week, then said royalty shall be paid instead of the weekly salary of seventy-five (75) dollars as aforesaid; it being understood that the royalty is to be paid in lieu of salary, whenever it exceeds the agreed weekly salary of seventy-five (75) dollars."

The plaintiff was paid in full for his services to March 15, 1921, the period covered by the original contract. The controversy arises out of the provisions of the second contract. The plaintiff contends that he produced a machine which, in accordance with the contract, the defendant was bound to accept and use, and that it should account to him for the royalties accruing to him under the contract, and pay him $75 a week for every week in which they were less than $75, during the "period of five years from . . . August 4, 1920." It is the contention of the defendant that the plaintiff failed to invent and perfect the machine as called for by the contract, and therefore the company is not liable in this action for damages for alleged breach of the contract. The case was referred to an auditor who found in accordance with the contention of the defendant. Afterwards, at the trial in the Superior Court, the jury returned a verdict in favor of the plaintiff. The defendant excepted to the refusal of the

trial judge to direct a verdict in its favor, to his refusal to give certain requests for rulings, and to parts of the charge. The judge reported the case to this court. It was agreed that if the plaintiff was not entitled to recover any damages accruing after the date of the writ, the verdict, if for the plaintiff, should be limited to $1.

The evidence showed that the work done by the plaintiff in the construction of the machine was performed in the defendant's factory with materials furnished by the defendant; that the machine was completed about October 1, 1920. The authority of the officers of the corporation to make the contract is not raised. The evidence submitted to the jury, besides the auditor's report, consisted of the testimony of several witnesses. It was conflicting, the principal question in dispute being whether the plaintiff had performed his contract "to invent and perfect a new die casting machine for making aluminum heels." The issue presented was one of fact and we cannot say that as matter of law the conclusion reached by the jury in favor of the plaintiff was unwarranted.

There was evidence which justified a finding that the defendant agreed to furnish all the materials necessary for the construction of the machine. Philip Finberg, an officer of the defendant, testified that he "did not have anything to do with Mr. Sermuks' work on the machine only to supply him and help him get the different things necessary; that Sermuks asked the witness from time to time for the different things which he said he needed in connection with the work," and that they were furnished. There was other testimony from which it could be found that the defendant agreed to furnish such materials. David Finberg, who was the defendant's president in 1920 and 1921, testified that the company had spent between $10,000 and $12,000 in materials for the machine. The judge instructed the jury in substance that, if they believed "the testimony of the plaintiff and of the witnesses, named Finberg," they would be warranted in finding there was an agreement, express or implied, between the parties that the defendant should furnish the

plaintiff the materials and means reasonably necessary to make the machine. These instructions were correct.

It could have been found from the conduct of the parties that an independent collateral agreement was entered into by which the defendant was to furnish all the materials required to construct the machine. It could have been further found that the plaintiff repeatedly requested the defendant's officers to furnish him with a proper pyrometer for use on the machine; that the one furnished was old, inaccurate and valueless; that the defendant's officers told him they would buy him a new one but that they failed to do so; that an air compressor which takes air into the machine and pumps it to the supply tank was furnished to the plaintiff by the defendant; that its greatest capacity was one hundred and twenty pounds to the square inch; that the plaintiff told the defendant's officers this air compressor was inadequate, to obtain good results he needed one that would produce from two hundred and fifty to three hundred pounds pressure; that they furnished him another, not new, and with a maximum capacity of one hundred and eighty pounds; that he told them he could do nothing with it and requested one of three hundred pounds pressure, which they refused to furnish. There was evidence from which the jury were warranted in finding that if a proper pyrometer and air compressor had been furnished by the defendant the machine would have been in all respects in compliance with the contract.

It could have been found that the written agreement did not represent the entire contract between the parties; that in addition there was an oral agreement by which the defendant was to furnish the materials necessary for use in the construction of the machine. *See* v. *Norris*, 234 Mass. 345. *See.* v. *Downey*, *ante*, 47. The agreement so made was one which the parties were authorized to make. This is not a case where oral evidence was admitted to vary, control or contradict a contract free from ambiguity. There is nothing in *Waldstein* v. *Dooskin*, 220 Mass. 232, contrary to what is here decided.

There was evidence tending to show that the plaintiff was successful in inventing and perfecting a new machine which complied in all respects with the written agreement, and that it would have produced suitable and perfect aluminum heels if the defendant had furnished a proper and sufficient pyrometer and air compressor to operate it as requested by the plaintiff. There was evidence that in certain respects it was a new machine and different from any that had been patented. At the trial counsel for the defendant stated that the defendant raised no question as to infringement. The jury could have found that after the machine had been built in conformity to the contract, the defendant refused to use it or to pay the plaintiff a royalty.

It is plain that the evidence warranted a finding that the defendant repudiated its contract. The breach went to the essence of the contract and entitled the plaintiff to sue for damages. He was not required to wait until the end of the term during which the agreement was to run, but could bring his action at once and recover full damages; and he is not limited in such recovery to damages accruing before the date of the writ. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87, 91. *R. H. White Co.* v. *Jerome H. Remick & Co.* 198 Mass. 41, 47. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 379–381, and cases cited. *Burnham* v. *Dowd,* 217 Mass. 351, 360. *Garfield & Proctor Coal Co.* v. *New York, New Haven & Hartford Railroad,* 248 Mass. 502, 507. *Vitagraph, Inc.* v. *Park Theatre Co. of Boston,* 249 Mass. 25, 31.

It is contended by the defendant that an action of this kind cannot be maintained in this Commonwealth unless there has been a breach before the date of the writ, and that to permit the jury to consider in determining damages the royalties that would have accrued is contrary to the Massachusetts rule respecting anticipatory breach. "It is often thought to allow a plaintiff to sue and recover full damages before the time for the completion of all the defendant's performance is to allow the doctrine of anticipatory breach, yet this is not the case. As soon as a party to a contract breaks any promise he has made, he is liable to an action. In such an action the plaintiff will recover whatever damages

the breach has caused." Williston on Sales (2d ed.), § 585-a. *Speirs v. Union Drop Forge Co., supra. St. John v. St. John,* 223 Mass. 137. *Barry v. New York Holding & Construction Co.* 226 Mass. 14, 18, 19. *Vitagraph, Inc. v. Park Theatre Co. of Boston, supra.* Williston on Contracts, § 1292. Sedg. Damages, § 90. The doctrine enunciated in *Daniels v. Newton,* 114 Mass. 530, *Deane v. Caldwell,* 127 Mass. 242, and other cases cited by the defendant have no application to the facts in the case at bar. It follows that the defendant's nineteenth request was rightly denied.

The defendant's motion for a directed verdict and his first request were rightly denied. The judge repeatedly told the jury in substance and effect that, unless the plaintiff proved by a fair preponderance of the evidence that he had invented and perfected a new die casting machine which was successful and efficient in the quality and quantity of the product made by it, the plaintiff could not recover. There was no error in refusing to give requests two and three, as the evidence warranted a finding that the original contract had been modified by an oral agreement under which the defendant was to furnish the materials necessary for the construction of the machine. As the original agreement was silent concerning who was to furnish the materials, evidence of the oral agreement was admissible, not to contradict or vary the writing, but to explain and apply it and to show the meaning put by the parties upon the words they used. *Willett v. Smith,* 214 Mass. 494, 497. *Gardner v. Denison,* 217 Mass. 492, 495.

Requests five, six, seven, eight, nine, ten, eleven, twelve, fifteen, and seventeen were rightly refused: they related to questions of fact to be determined by the jury upon the evidence. Request thirteen could not properly have been given, for, if the defendant promised to furnish a proper air compressor, the consideration for which the plaintiff agreed to build the machine was a sufficient consideration for such promise. The sixteenth and eighteenth requests were rightly denied as the jury could have found that the defendant was required to furnish a proper and suitable air compressor.

It is recited in the report that "On the question of damages

it was agreed by the parties at the trial that the amount of the royalties of one quarter of a cent on each pair of aluminum heels made by the defendant between March 21, 1921, the date of the writ in this action, and October 19, 1922, when the defendant corporation ceased to do business, would be $3,125. . . . and that if the jury was not entitled to consider in determining damages the amount of royalties which would have accrued after the date of the writ, the verdict, if the plaintiff was entitled to recover, should be a nominal verdict of one dollar." In view of this agreement, the jury in determining the damages were entitled to consider the amount of royalties which would have accrued after the date of the writ, and they were so instructed.

The exceptions to the charge are not argued and we treat them as waived. The jury returned a verdict for the plaintiff for $3,125 damages, with interest from the date of the writ.

No harmful error of law appears in the conduct of the trial: in accordance with the terms of the report the entry must be

*Judgment for the plaintiff on the verdict.*