NORRIS BENDETSON, trustee, & others[1] *vs.* HAMILTON
COOLIDGE & others.[2]

Middlesex.    April 12, 1979. — June 22, 1979.

Present: GRANT, PERRETTA, & KASS, JJ.

*Contract*, For sale of real estate. *Evidence*, Extrinsic affecting writing. *Frauds, Statute of. Estoppel. Real Property*, Equitable restrictions.

Where a purchase and sale agreement provided that it "set [ ] forth the entire contract between the parties" and imposed detailed restrictions on the grantee, expressly for the benefit of the grantor, while imposing only limited restrictions on the grantor, parol evidence was not admissible to show that the parties intended that the grantor should be obligated to adhere to a site plan which was attached to the agreement as an exhibit. [802-803]

In an action by a grantee of land seeking a declaration that the grantor failed to build on adjoining land in accordance with an agreed upon site plan, the grantee was barred by the Statute of Frauds from maintaining that an agreement about the location of future

---

[1] Margery J. Bendetson, also as trustee of Bendetson Heritage Trust, and Norris Bendetson as an individual.

[2] Stephen H. Anthony, Richard W. Spaulding, Charles R. Hefford, Richard E. Thyng, Richard E. Dobroth, all as trustees of NEEP Triangle Trust, Spaulding and Slye Corporation, and Cornhill Construction Company, Inc.

construction was the product of an understanding arrived at orally; the site plans, which had been initialled by both parties, did not constitute memoranda sufficient to satisfy the requirements of the Statute of Frauds. [803]

In an action by a grantee of land seeking a declaration that the grantor failed to build on adjoining land in accordance with an agreed upon site plan, the grantor was not estopped by its conduct throughout the negotiations from denying a collateral agreement with respect to future construction on the adjoining land where the grantor raised the issue of site planning in the negotiations to protect its own interests and not to induce the grantee to buy the land and where the conduct of the grantor did not warrant an assumption that it was committing itself to a particular development plan. [803-804]

The buyer of a parcel of land could not invoke the benefit of protective covenants in a purchase and sale agreement and a deed where the restrictions were imposed on the buyer expressly for the benefit of the seller. [804]

CIVIL ACTION commenced in the Superior Court on December 22, 1976.

The case was heard by *Cullen, J.*, a District Court judge sitting under statutory authority.

*Stuart F. Liss* for the plaintiffs.

*John G. Fabiano* for the defendants.

KASS, J. When the plaintiff Norris Bendetson (Bendetson)[3] entered into a purchase and sale agreement to buy from the defendants 74,708 square feet of land in Burlington, he agreed that the retail furniture store he proposed to construct would conform to certain criteria. Reciprocally, the plaintiffs allege in their complaint, the seller, NEEP Triangle Trust (NEEP), agreed orally to build on the remainder of its land in accordance with an agreed upon site plan and failed so to do. The complaint asks for a declaration of rights and the award of damages. From a judgment in favor of the defendants, the plaintiffs appeal. There was no error, and we affirm the judgment.

---

[3] For convenience of reference we refer to the Bendetson Heritage Trust, Norris Bendetson and Margery J. Bendetson simply and interchangeably as "Bendetson."

We summarize the facts, which we take from a thorough and capably prepared master's report. The subsidiary facts in the master's report are binding upon us unless they are clearly erroneous, mutually inconsistent, contradictory, or vitiated in view of the controlling law. *Selectmen of Hatfield* v. *Garvey*, 362 Mass. 821, 825 (1973). *Michelson* v. *Aronson*, 4 Mass. App. Ct. 182, 190 (1976).

Bendetson, a sophisticated businessman, became interested in January or February, 1974, in a parcel of land in Burlington, Lot 54, which NEEP owned. Lot 54 was across the street from the Burlington Mall and from the New England Executive Park, a cluster of office buildings. The beneficial interest in NEEP was held by Spaulding and Slye Corporation and New England Mutual Life Insurance Company, which were also the principals in the development of the adjoining New England Executive Park.

Enthusiastic about the location, Bendetson pressed for early consummation of a sale, but Spaulding and Slye, which negotiated for NEEP, declined to commit itself to sell until it had matured its development plans for the remainder of what the parties came to call the "triangle parcel," i.e., the entire undeveloped area, inclusive of Lot 54, which NEEP owned on the northerly side of Burlington Mall Road.

As the discussions progressed, Spaulding and Slye (acting through various officers) told Bendetson that it would insist on the right to approve elements of the design of the building Bendetson proposed to erect, including site location and items of exterior aesthetic effect such as brick, color of mortar, metal flashing, signs, window frames and landscaping. Further negotiations, joint planning, and exchanges of drawings proceeded between the parties as the year advanced. NEEP's lawyer sent a draft purchase and sale agreement to Bendetson's lawyer in late July. Bendetson again communicated to Spaulding and Slye his desire to button up the transaction as quickly as possi-

ble. Throughout these discussions NEEP, through Spaulding and Slye, manifested an intention, orally and by proposed site plans, to build two free standing restaurant buildings on the balance of the triangle parcel. It also stressed repeatedly its concern that the building Bendetson proposed to build should not produce any adverse impact on the existing office building complex or NEEP's future development plans, and that restrictions to this effect would be reduced to writing.

On December 18, 1974, the parties forgathered, with experienced counsel (who had participated throughout), for a closing of the transaction at the office of NEEP's lawyers, who presented Bendetson and his attorney with execution copies of a purchase and sale agreement and a deed of Lot 54. These documents were in due course signed, sealed and delivered. They imposed on the buyer, Bendetson, obligations contained in protective covenants previously registered by the seller, which, together with various other restrictions, were imposed "for the benefit of the Grantor and such of its successors in title to any of its remaining land." Attached to the purchase and sale agreement were a site plan and detailed plans and specifications to which the *buyer* bound itself to conform. The agreement also contained provisions for reciprocal easements for access and parking, and the deed incorporated these easements. In addition the agreement bound the buyer into a merchants' association. We recite details of the governing documents because, like the dog in the Sherlock Holmes story[4] who did not bark, the papers are significant for what they did not say. Nowhere did they impose on the seller, NEEP, an obligation to adhere to a particular site plan. The agreement contains an integration clause which provides that it "sets forth the entire contract between the parties," and the usual clause that acceptance of the deed shall be deemed to be a full per-

---

[4] Doyle, Silver Blaze, The Memoirs of Sherlock Holmes, as compiled in The Complete Adventures of Sherlock Holmes, 383, 397 (1938).

formance and discharge of every obligation of the seller except for certain provisions which the agreement expressly provides shall survive delivery of the deed.

1. Faced with the integration clause, the plaintiffs point to decisions which have held that where silence or an omission results in an ambiguity, parol evidence is admissible to show the circumstances in which an instrument is negotiated. See *Sermuks* v. *Automatic Aluminum Heel Co.*, 256 Mass. 478, 486 (1926); *Kesslen Shoe Co.* v. *Philadelphia Fire & Marine Ins. Co.*, 295 Mass. 123, 131 (1936); *Cooley* v. *Bettigole*, 1 Mass. App. Ct. 515, 520-521 (1973). But those cases dealt with contracts which were sketchy to begin with or which failed to speak one way or the other to an essential question raised by subject matter of the agreement. Compare *Fay, Spofford & Thorndike, Inc.* v. *Massachusetts Port Authy.*, ante 336, 342 (1979), where the failure of the contract to deal with an unanticipated factual development allowed the court to consider attending circumstances. The contract before us in the instant case, however, is detailed and does deal with restrictions on the use of land: it imposes them on the grantee, expressly for the benefit of the grantor, and imposes only limited restrictions on the grantor. The silence as to building location restrictions on the developers has the earmarks of an intended silence — especially since the agreement did restrict NEEP in the use of its remaining land for a retail furniture store — rather than the silence of oversight. The plaintiffs urge that we not apply the parol evidence rule in a mechanical fashion. Nor do we so, but we are equally wary of reading excessively between the lines. If every instance of not treating directly with a subject in an agreement (especially when so doing has legal consequences, as is surely the case when a restriction is *not* imposed on the use of land) were the occasion for piercing an integration clause, the utility of the art of legal draftsmanship will have suffered a serious setback. Where the writing shows on its face that it is the entire agreement of the parties and "comprises

all that is necessary to constitute a contract, it is presumed that they have placed the terms of their bargain in this form to prevent misunderstanding and dispute, intending it to be a complete and final statement of the whole transaction." *Glackin* v. *Bennett,* 226 Mass. 316, 319-320 (1917). *Berman* v. *Geller,* 325 Mass. 377, 379-380 (1950). *Gifford* v. *Gifford,* 354 Mass. 247, 249 (1968). *Finnerty* v. *Reed,* 2 Mass. App. Ct. 846, 847 (1974).

2. In any event, Bendetson argues, the parties, by their act of initialling a site plan at the closing, effected a separate collateral agreement which bound them to locate their buildings as shown on the plan. The difficulty with this reasoning is that the site plan which was initialled was marked as, and constituted, an exhibit to the purchase and sale agreement, which in turn imposed site restrictions on Bendetson but not on NEEP. To the extent that a separate agreement about the location of future construction on NEEP's land was the product of an understanding arrived at orally, the plaintiffs are barred by the Statute of Frauds. G. L. c. 259, § 1, Fourth. *Sprague* v. *Kimball,* 213 Mass. 380, 381-382 (1913). See *Snow* v. *Van Dam,* 291 Mass. 477 (1935), in which the court said at 482: "the statute of frauds prevents the enforcement against the vendor ... of any implied or oral agreement that the vendor's remaining land shall be bound by restrictions similar to those imposed upon lots conveyed." See also *Frank* v. *Visockas,* 356 Mass. 227, 228-229 (1969), and discussion of the pertinent case law in *Houghton* v. *Rizzo,* 361 Mass. 635, 639-641 (1972). We do not read the initialled site plans as constituting memoranda which take the matter out of the Statute of Frauds. There is about them no hint of undertaking of obligation by the defendant.

3. Another line of attack which the plaintiffs adopt is that NEEP's conduct throughout the negotiations estops them from denying a collateral agreement tying them to a specific configuration of buildings on the balance of their land. Indeed, the master found that NEEP intended

to build two free standing restaurant buildings containing about 12,400 square feet in the aggregate and that it ultimately built one building for retail stores of about 33,000 square feet. He also found that NEEP communicated to Bendetson that leases with the prospective restaurant tenants had not yet been signed. There was no overwhelming reason for Bendetson, an experienced businessman, and his experienced counsel to assume that NEEP was locking itself irrevocably to a development plan for tenants not yet secured. Above all, the inducement element necessary to work an estoppel is missing. *Cleaveland* v. *Malden Sav. Bank*, 291 Mass. 295, 297-298 (1935). *Industrial Bankers of Mass., Inc.* v. *Reid, Murdoch & Co.*, 297 Mass. 119, 124 (1937). *DeSisto's Case*, 351 Mass. 348, 351-352 (1966). The master found that Bendetson repeatedly pressed NEEP to sell. NEEP raised the issue of site planning to protect its interests, not to induce Bendetson to buy.

4. Bendetson also argues that NEEP has violated its own protective covenants. That argument fails because neither the agreement nor the deed granted to the buyer the benefit of the protective covenants; rather these documents imposed the protective covenants on the buyer. Having not received the benefit of the protective covenants, the plaintiffs may not invoke them. *Houghton* v. *Rizzo*, 361 Mass. at 637-641.

5. With respect to all of the arguments advanced by the plaintiffs, it is instructive to note that the deed, in expressing the parking easement, provides "that neither Grantors, nor their successors in title, shall be under any obligation to devote any portion of said remaining land for any of such purposes or, once having devoted any such portion, to continue to devote the same for any of such purposes." This is not language tailored to bind the grantor to a static land use plan.

6. On appeal the plaintiffs have attempted to raise an issue concerning an alleged encroachment by NEEP on an easement concerning vehicular passage contained in

the deed to Bendetson. The complaint contains no mention of this subject, and the master's report is devoid of reference to it. It may, therefore, not be raised for the first time on appeal. *Gerber* v. *Ty-Data, Inc.,* 5 Mass. App. Ct. 898 (1977).

*Judgment affirmed.*