Merrick, P.J.
This is an action to recover part of the purchase price of stock in a family business allegedly owed pursuant to a written agreement Plaintiffs Dennis J. McCarthy and Edith B. McCarthy (the “parents”) operated a carpet business for about 50 years. Some of their children, particularly their son Brian, worked in the store over the years. Beginning in 1982, the business was operated by a corporation, DJ. McCarthy & Sons, Inc. At the time of the agreement at issue in this case, there were 100 shares of stock outstanding in the coiporation, of which 65 shares were owned by the parents and 35 shares were owned by Brian.
In 1997, the parents were considering retirement and Brian wanted to purchase their stock in the corporation. The parties agreed on a purchase price of $307,106.82, which included the “writeoff’ of $113,464.60 in loans from the cotpo-ration to the parents and payment of $193,464.60 by Brian in weekly and annual installments over ten years.
Perhaps because this was a transfer of stock from parents to a son rather than an arms length transaction, some of the payment terms were unusual. Both weekly payments in the amount of $350.00 and annual payments in the amount of $7,800.00 would not have to be made when they came due unless the corporation had sufficient funds to pay all its operating costs for the following 90 days. Brian retained a lawyer to draw up an agreement.
The lawyer sent a draft agreement to the parents. With regard to payments not made when due because of the lack of 90 days’ operating funds, the draft provided that those payments would “lapse and not carry forward to any subsequent payment” The parents objected to this provision and negotiated the different terms which were then inserted into the agreement by Brian’s lawyer. Section 2 of the agreement set forth the payment terms in subparagraphs (a) through CO, which included the following:
(d) If either none or only a part of each weekly payment or year end payment is made, the amount paid will lapse and carry forward to be added to a subsequent payment to be made no earlier than January 1, 2009 as described immediately below; and
(e) Any amounts not paid during the term of this Agreement shall be accumulated and be payable no earlier than January 1, 2009, provided cash flow of the Corporation supports such payment If cash flow of the Corporation at that time does not support payment of the accumulated arrearage, such amount will be forgiven by the Sellers.
*107 (0 All payment obligations under ibis provision of this Agreement shall terminate upon either the death of [Brian], on the one hand, or the death of both [parents], on the other [emphasis supplied].
The agreement also included the following “integration clause”:
The present agreement constitutes the entire Agreement between the parties with respect to its subject matter, supersedes any preliminary negotiations or memoranda with respect to the subject matter contained herein, and shall not be modified except by further writing signed by the parties hereto. This Agreement shall be construed under the laws of the Commonwealth of Massachusetts.
The final agreement was dated January 5,1998. Approximately three years later, in January of 2001, Brian died from a liver condition.[3] No weekly or annual payments had ever been made, apparently because there was never a time when the business had 90 days of operating funds on hand. Brian’s widow and executrix, Sheila A McCarthy (“Sheila”), later sold the business for approximately $200,000.00.
The parents brought this action against Sheila, as executrix, to recover $23,400.00 for three annual $7,800.00 payments that were deferred under the contract Sheila filed a Mass. R Civ. E, Rule 12(b) (6), motion to dismiss on the ground that, based upon the contract attached to the complaint, the complaint failed to state a claim upon which the parents could recover. The parents responded with an affidavit which set forth the facts recited above and also asserted that they did not intend the death clause of the purchase agreement to terminate deferred obligations.[4] The trial court allowed Sheila’s motion to dismiss, and the parents filed this Dist/Mun. Cts. R A D. A, Rule 8A appeal of that dismissal.
1. The parents correctly note that “[a]s a general proposition, the meaning of a written document, if placed in doubt, is construed against the party that wrote it”[5] Garnick & Scudder, P.C. v. Dolinsky, 45 Mass. App. Ct. 925, 926 (1998). See also Merrimack Valley Nat'l Bk. v. Baird, 372 Mass. 721, 724 (1977). A contract of adhesion is not necessarily unenforceable, but ordinarily all doubts as to its meaning and effect are to be resolved against the drafter. Lechmere Tire & Sales Co. v. Burwick, 360 Mass. 718, 720-721 (1972). The contract in this case, however, was not one of adhesion because the parents were free to participate in its drafting and did, *108 in fact, negotiate changes included in the final agreement See Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248, 253 (1992).
More importantly, there is nothing ambiguous about paragraph 2(f) of the parties’ agreement which stated that “[a]ll payment obligations under this provision of this Agreement shall terminate upon either the death of [Brian], on the one hand, or the death of both [parents], on the other.” An ambiguity in a contract will be found “if the language is susceptible of more than one meaning. [Citations omitted]. It must be shown that reasonably intelligent persons would differ as to which one of two or more meanings is the proper one.” Jefferson Ins. Co. of New York v. Holyoke, 23 Mass. App. Ct. 472, 474-475 (1987). The existence of a controversy between the parties does not itself create an ambiguity. Id. at 475.
2. The parents next assert that the changes they negotiated in the agreement show that they intended to recover the deferred payments, even if Brian died. Further, they assert that the two drafts together at least create an ambiguity on the subject of whether payments which had been deferred were still due after Brian’s death.
Unhappily for the parents, “[t]he parol evidence rule bars reliance on preliminary negotiations to undermine unambiguous language in a final, integrated agreement” The Community Builders, Inc. v. Indian Motorcycle Associates, Inc., 44 Mass. App. Ct. 537, 552 (1998). Like the plaintiffs in Bendetson v. Coolidge, 7 Mass. App. Ct. 798 (1979),
[flaced with the integration clause, the plaintiffs point to decisions which have held that where silence or an omission results in an ambiguity, parol evidence is admissible to show the circumstances in which an instrument is negotiated. [Citations omitted]. But those cases dealt with contracts which were sketchy to begin with or which failed to speak one way or the other to an essential question raised by subject matter of the agreement
Id. at 802. And again, as noted, the language of the parties’ final agreement was not ambiguous.
Claims of ambiguity and fraud do not hold the line against summary judgment if the documents do not reflect ambiguity on the point in question, and the party resisting summary judgment adduces no evidence of ambiguity or fraud.... A judge uses summary judgment for the purpose for which it was intended when, as in this case, a party seeks to alter what the agreement provides by saying, in effect, ‘that was not what we meant at all.’
USTrust v. Henley & Warren Management, Inc., 40 Mass. App. Ct. 337, 343 (1996). It would not be sufficient, in any event for the parents to assert that they misunderstood the agreement they signed without demonstrating that Brian shared that misunderstanding. The Community Builders, Inc. v. Indian Motorcycle Associates, Inc., supra at 552.
Finally, even if the earlier draft and changes are taken into consideration, there is still no ambiguity in the contractual provision governing death of a party
The defendant’s Rule 12(b) (6) motion to dismiss was correctly allowed.
Judgment affirmed. Appeal dismissed.
So ordered.

 Although Brian suffered from that liver condition at the time the purchase agreement was made, the parties did not consider his condition to be terminal. The plaintiffs have properly refrained from any argument that the parties’ belief or understanding of Brian’s condition qualified as amutual mistake of fact which would permit redssion of the contract LaFleur v. C.C. Pierce Co., 398 Mass. 254, 257-259 (1986).

 The parents’ assertion that their filing of an affidavit converted Sheila’s dismissal motion to one for summary judgment is somewhat backward. A court may treat a defendant’s motion to dismiss, accompanied by an affidavit, as a motion for summary judgment because it would make little sense to insist upon the “useless formality” of the defendant refiling the same motion with a new title. J.S. SMITH & H.B. ZOBEL, RULES PRACTICE, §12.14 (1975). If a complaint fails on its face to state a claim for which relief can be granted, the proper remedy for the plaintiff is to amend the defective complaint, not add to it with a supplemental affidavit For purposes of our decision here, we assume all of the facts stated above.

 The parents further argue that “the principle surely counts double when the drafter is a lawyer writing on his or her own account to a client” Benalcazar v. Goldsmith, 400 Mass. 111, 114 (1987); Beatty v. NP Corp., 31 Mass. App. Ct. 606, 612 (1991). The argument has no application here because the lawyer who drafted the agreement was acting on Brian’s behalf, not his own.