USCA1 Opinion

 

 August 5, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-2319 BOSTON CAR COMPANY, INC., d/b/a ACURA OF BOSTON, Plaintiff, Appellant, v. ACURA AUTOMOBILE DIVISION, AMERICAN HONDA MOTOR CO., INC., Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Lay,* Senior Circuit Judge, ____________________ and O'Scannlain,** Circuit Judge. _____________ ____________________ Robert C. Gerrard with whom Thomas S. Fitzpatrick and Davis, Malm _________________ ______________________ ___________ & D'Agostine, P.C. were on brief for appellant. __________________ J. Donald McCarthy with whom Lyon & Lyon, P.C., Hope E. Melville, __________________ __________________ ________________ William H. Baker, Christopher R. O'Hara and Nutter, McClennen & Fish ________________ ______________________ _________________________ were on brief for appellee. ____________________ ____________________ _____________________ * Of the Eighth Circuit, sitting by designation. ** Of the Ninth Circuit, sitting by designation. O'SCANNLAIN, Circuit Judge: This diversity case arises _____________ from a dispute about the terms of an automobile franchise agreement entered into by American Honda Motor Co. ("American Honda"), the distributor of the Acura line of cars, and Boston Car Co., Inc. ("Boston Car"), holder of an Acura dealer franchise. The district court ruled for American Honda, and Boston Car appeals. We affirm. I In 1985, James Carney, the principal of Boston Car, began discussions with the Acura Automobile Division of American Honda with the object of obtaining an Acura dealership. Damien Budnick represented American Honda in these discussions. On May 7, 1985, Carney signed a letter of intent ("LOI") setting forth the conditions under which American Honda would grant Carney an Acura dealership, to be located in the town of Newton in suburban Boston. In the vernacular of the trade, Carney was to be granted the Newton "point," or dealership location. The LOI listed several other points American Honda expected to establish as part of their marketing plan for the Boston metropolitan area. Carney was unable to secure a suitable location in Newton but identified a fitting site in the Brighton area, near Newton but within the city limits of Boston. Based on this location, Carney sought the so-called "Boston point" from American Honda. Since his prospective location -2- remained close to Newton, Carney wanted the Newton point deleted from American Honda's marketing plan. He also expressed concerns about the Lexington and Natick points. Both parties agree that several discussions ensued between Carney and Budnick on the subject of the location and planned opening date of other points in the Boston area. Eventually, American Honda granted Carney the Boston point as the first Acura dealership in the Boston metropolitan area. The Newton point was dropped, and replaced by a Dedham point. American Honda kept the Lexington and Natick points, although it apparently agreed to delay the opening of the Lexington point. The final LOI issued by American Honda on August 2, 1985 and accepted by Carney stated: The primary market area that you have applied for is only part of our market representation plan. It is our intention to establish additional Acura dealers in the surrounding primary market areas: Danvers, Lexington, Dedham, Natick, Norwood and Norwell. By January 1988, American Honda had filled four of the six points mentioned in the LOI. The Norwood point was filled by a dealership in the neighboring town of Walpole, the Danvers point was filled by a dealership in the neighboring town of Peabody, the Natick point was filled by a dealership in the neighboring town of Framingham, and the Norwell point was filled by a dealership in Norwell. In each case, American Honda sent a letter to Boston Car -3- informing it of the new dealership. Each letter stated that "[t]his action is consistent with our previously stated marketing plan as contained in your original Letter of Intent dated August 2, 1985." On April 27, 1988, American Honda issued an LOI to William York to establish an Acura dealership in Revere. This dealership was to replace the Dedham point because the planned Dedham site turned out to be contaminated. On May 4, 1988, York signed the LOI. The following day, Budnick hand delivered a letter to Boston Car and to other area dealers giving notice of American Honda's intent to start a dealership in Revere. This letter, unlike the previous notice letters, did not state that establishment of the new dealership was consistent with Boston Car's LOI. In response to notice of the Revere LOI, the principal of the Peabody dealership formally notified American Honda on May 26, 1988, of its intent to file suit. The Peabody dealership also informed Boston Car that, in order to sue under the Massachusetts franchise law, Boston Car would have to give notice within thirty days of American Honda's notice of intent to establish the Revere dealership. On June 28, 1988, Carney sent a letter to American Honda objecting to the new franchise in Revere. The letter did not state an intention to sue American Honda, however. The Peabody dealership proceeded to file suit. That suit was settled in the fall of 1988. -4- On January 24, 1989, Boston Car filed this action against American Honda in state court, alleging violations of the Massachusetts automobile franchise law, Mass. Gen. L. Chap. 93B, misrepresentation and breach of contract. American Honda removed the case to federal court on the basis of diversity of citizenship.1 American Honda also brought a counterclaim seeking a declaratory judgment that it had the legal right to establish a dealership in Revere. American Honda moved for summary judgment. Judge Wolf heard oral argument on the motion, but then requested testimony from Carney and Budnick. Thus, the summary judgment proceeding turned into something like a short bench trial, after which the judge made findings of fact.2 Following these proceedings, on November 25, 1991, Judge Wolf issued an oral opinion granting judgment for American Honda. In a thorough and lucid opinion, Judge Wolf ruled that the LOI between Carney and American Honda was an enforceable agreement. Nonetheless, he concluded, the listing of future points was not a promise but merely a statement of American Honda's present intention. Further, Judge Wolf found no evidence that American Honda had acted in bad faith or misrepresented its true present intentions ____________________ 1 Boston Car is a citizen of Massachusetts, while American Honda is a citizen of California. 2 Neither party has objected to this procedure. We assume, without deciding, that it was proper. Because the judge resolved disputed issues of fact, we will review as we would an ordinary bench trial pursuant to federal Rule of Civil Procedure 52. -5- at the time the letter was executed, and he therefore rejected Boston Car's misrepresentation claim. Regarding Boston Car's claim under Chapter 93B, Judge Wolf found that Boston Car had waived any cause of action under the statute, because it had failed to give notice to American Honda of its intention to sue within thirty days of receiving notification of the new franchise. Judge Wolf found that American Honda's letter of May 5, 1988 constituted the statutorily required notice to existing franchisees of a proposed new franchise, and that Boston Car had failed to give notice of intent to sue within thirty days of receipt of that letter. Boston Car filed a timely notice of appeal. II We must first determine if we have jurisdiction over this appeal. Boston Car filed its notice of appeal on December 4, 1991. On December 20, 1991, this court issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction, noting that the order appealed from did not expressly dispose of American Honda's counterclaim. The parties then filed with the district court a "Joint Motion For Amended Order and Entry of Final Judgment On All Claims," asking the district court to amend its order of November 25, 1991, to grant judgment for American Honda on its counterclaim. Judge Wolf granted the joint motion of the parties and adopted their proposed order on January 30, 1992. No new notice of appeal was filed. -6- We conclude that the November 25 order was final and appealable and that we have jurisdiction over this appeal. Judge Wolf's order stated that American Honda's motion for summary judgment was granted. The motion requested "summary judgment on all issues in this case." Although American Honda's counterclaim was not specifically mentioned in the accompanying opinion, it was necessarily resolved by the November 25 order. Nor did the subsequent Joint Motion undermine the effectiveness of Boston Car's notice of appeal. True, under Rule 4(a)(4) of the Federal Rules of Appellate Procedure, a notice of appeal filed prior to the disposition of a timely motion to alter or amend judgment pursuant to Rule 52(b) or Rule 59 is a nullity. However, the Joint Motion, if construed as a Rule 52 or Rule 59 motion, was not timely. It was filed January 2, 1992, more than thirty days after entry of judgment. Because motions under Rules 52(b) and 59 must be served within ten days, if the Joint Motion were brought under these rules it was untimely and had no effect on the notice of appeal. See Flint v. Howard, 464 F.2d ___ _________________ 1084, 1086 (1st Cir. 1972) ("an untimely motion for reconsideration . . . is a nullity"). In any event, we think it more reasonable to construe the Joint Motion as a request for correction of an error arising from oversight or omission, pursuant to Rule 60(a). Rule 60 motions can be brought at any time, and do not -7- disturb a notice of appeal previously filed. We therefore conclude that, because the order was final and appealable and the notice of appeal was effective, we have jurisdiction and may proceed to the merits. III Boston Car contends that the district court erred in holding that American Honda was not bound by the recitation of its market plan in the August 1985 LOI. We must determine whether the district judge properly considered evidence of the party's intent beyond the four corners of the LOI, and if he correctly determined that the listing was not a promise. Our standard of review on these questions is bifurcated. "The determination of whether a contract provision is ambiguous is a question of law subject to plenary review." ITT Corp. v. LTX Corp., 926 F.2d 1258, _______________________ 1261 (1st Cir. 1991). If the contract provision is ambiguous, "a finding as to the meaning of a writing will be reviewed under the clearly erroneous standard." Gel ___ Systems, Inc. v. Hyundai Eng. & Constr. Co., 902 F.2d 1024, ___________________________________________ 1027 (1st Cir. 1990). The document's denomination as a letter of intent does not determine whether it was binding upon the parties. In Massachusetts, a letter of intent is binding to the extent the parties so intend. See Schwanbeck v. Federal-Mogul ___ _____________________________ Corp., 592 N.E.2d 1289, ____ (Mass. 1992). The parties do _____ not dispute that the LOI was in some respects binding. We -8- are asked to determine here only whether one specific provision, the market plan listing, was promissory or informational. "Under Massachusetts law, parol evidence may not be admitted to contradict the clear terms of an agreement, or to create ambiguity where none otherwise exists." ITT ___ Corp., 926 F.2d at 1261. However, we have recognized that: _____ in order to utilize extrinsic evidence of the parties' intent, a court need not invariably find facial ambiguity. The Massachusetts courts have said: When the written agreement, as applied to the subject matter, is in any respects uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting ________________________ or changing its terms. ______________________ Keating v. Stadium Mgmt. Corp., 508 N.E.2d ______________________________ 121, 123 (Mass. App. Ct.), review denied, _____________ 511 N.E.2d 620 (Mass. 1987). ITT Corp., 926 F.2d at 1264. _________ Thus, the threshold question is whether the term at issue is ambiguous, or at least uncertain or equivocal. The disputed provision of the LOI states: The primary market area that you have applied for is only part of our market representation plan. It is our intention to establish additional Acura dealers in the surrounding primary market areas: Danvers, Lexington, Dedham, Natick, Norwood and Norwell. On its face, the language appears clear: American Honda is merely stating its "intention" to establish certain -9- additional dealerships. On the other hand, the context may impart uncertainty. The remaining provisions of the LOI set forth a detailed list of binding conditions on the grant of the dealership. Moreover, the market plan roster is quite specific, naming six particular towns where dealerships will be located. On balance, we are persuaded that Judge Wolf did not err in considering parol evidence with respect to the parties' intentions for the purpose of elucidating the terms of the LOI. Considering the language of the provision and the testimony of Carney and Budnick, Judge Wolf's finding that the market plan listing was merely an expression of American Honda's present intentions rather than a binding promise is not clearly erroneous. As just stated, the language supports the view that the provision is merely a statement of present intention. Indeed, the provision states, "[i]t is our intention . . . ." This language stands in conspicuous contrast to the other provisions of the LOI, which are couched in promissory terms such as "we agree" and "you shall." Carney's own testimony confirms this understanding. Carney conceded that he understood at the time he signed the provision that the number and location of dealerships as stated in the letter was not irrevocably fixed, but was subject to change as market conditions changed. Carney clearly realized that the precise locations of the listed -10- points were subject to change: he himself had insisted on changing the location of his original point, and three of the four subsequently filled points were established in towns other than those listed in the LOI, with no objection from Carney. Boston Car makes much of the fact that Carney and Budnick had extensive discussions regarding where the other Boston area points would be located and when they would open. Boston Car argues that these discussions demonstrate the binding nature of the provision setting forth the points, because sophisticated businessmen would not waste their time negotiating a non-binding term. An equally plausible account, however, is that Carney indeed was concerned about the number and location of the other Boston area points, that he and Budnick talked extensively on the subject, but that ultimately American Honda, which was unwilling to bind itself to an inviolable plan, prevailed. In any event, the mere fact of negotiations on the number and location of the Boston points does not persuade us that the statement of intention regarding such points is binding. IV Boston Car also appeals the rejection of its claim under Chapter 93B of the Massachusetts General Laws. Chapter 93B forbids the grant of a new franchise by an automobile manufacturer or distributor "arbitrarily and without notice to existing franchisees." Mass. Gen. L. ch. -11- 93B, 4(3)(l). Notice must be provided at least "sixty _ days prior to granting such franchise" to all existing dealers within a twenty-mile radius of the proposed new franchise. Id. An existing dealer may bring an action ___ under this section to challenge the grant of a new franchise, but only if it "first give[s] written notice of its intention to do so . . . within thirty days from the date on which it received notice of such intention to grant or enter into the additional franchise or selling agreement." Id. American Honda contends, and the district ___ court found, that Boston Car failed to give notice of its intention to sue within thirty days of receiving word of the new Revere franchise, and that accordingly Boston Car's statutory claim was barred. Boston Car argues that it never received proper notice from American Honda of the intent to grant the Revere franchise, and hence could bring its statutory claim anytime before the franchise actually began business. The district court determined that American Honda's May 5, 1988, letter to Boston Car informing it of the execution of an LOI for a new Revere dealership was the statutorily required sixty day notice. It is undisputed that Boston Car did not respond to this letter until June 28, 1988, well past the thirty day limit for giving notice of intent to sue. Moreover, Boston Car's response did not state an intention to sue, but merely expressed generalized -12- opposition to the Revere dealership. If American Honda's May 5 letter was effective notice of the proposed new franchise, therefore, Boston Car's Chapter 93B claim is barred by its failure to issue a timely notice of intent to sue. Boston Car argues that the franchise was effectively granted by the LOI, and consequently the May 5 letter did not provide sixty days notice of the new franchise. Boston Car contends that the LOI entered into with York amounted to the grant of a franchise because it obligated American Honda to grant a sales agreement if York fulfilled all of the listed conditions.3 ____________________ 3 Boston Car suggests for the first time on appeal that the issue of whether the LOI constituted the grant of a franchise within the meaning of Chapter 93B should be certified to the Supreme Judicial Court of Massachusetts. We decline to certify this question. We have previously noted that failure to request certification in the district court "considerably weakens" the case for certification on appeal. Fischer v. Bar Harbor Banking and Trust Co., 857 _____________________________________________ F.2d 4, 8 (1st Cir. 1988). We agree with the Eighth Circuit that "[t]he practice of requesting certification after an adverse judgment has been entered should be discouraged. Otherwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision." Perkins v. Clark Equipment Co., 823 F.2d ______________________________ 207, 210 (8th Cir. 1987). Boston Car does not cite any -13- Chapter 93B defines a franchise as an agreement in which a manufacturer or distributor grants a dealer a license to use the manufacturer's trade name or service mark, "and in which there is a community of interest in the marketing of motor vehicles or services related thereto." We conclude that this definition does not encompass the relationship established by the LOI between American Honda and York. The major premise of Boston Car's argument, that the LOI obligated American Honda to enter into a dealership agreement with York, is fatally flawed. The LOI was entirely contingent. Significantly, it specifically stated that American Honda was not obligated to grant the franchise if legal problems developed. Although American Honda's freedom to opt out of a dealership agreement was somewhat circumscribed by the LOI, the franchise was not a fait accompli once the LOI was executed. American Honda remained free to decline to enter a dealership agreement if it appeared that establishment of a new dealership would violate Chapter 93B. Boston Car cites Ricky Smith Pontiac v. Subaru of New ______________________________________ England, 440 N.E.2d 29 (Mass. App. 1982), in support of its _______ ____________________ compelling reason for certification. There is no split of authority, the words of the statute itself provide sufficient guidance that our decision will not be merely conjectural, and we do not find the question particularly close. -14- contention that the issuance of an LOI constitutes the grant of a franchise within the meaning of Chapter 93B. In dicta, Ricky Smith states that section 4(3)(l) "plainly _____________ _ contemplates written notice to existing dealers of a manufacturer's or distributor's intent to appoint a new dealer within their relevant market area followed by discussion between the parties of the reasons which warrant the appointment." Id. at 43. According to Boston Car, ___ unless notice is given before the LOI is issued, such discussions will be reduced to an empty formality. We disagree. As already pointed out, the LOI issued to York expressly conditioned the grant of a sales agreement on the absence of any legal bar to establishment of the dealership. Nothing in the LOI, therefore, would forestall American Honda from terminating its agreement with York if discussions with existing dealers showed that Chapter 93B would bar the grant of the Revere franchise. Moreover, the notice sufficiently predated the projected opening date of the Revere dealership to allow for effective negotiations, with both York and existing dealers, on the exact location of the new dealership, or other accommodations. Discussions engendered by the notice would not necessarily be futile gestures.4 ____________________ 4 We need not decide for purposes of this appeal precisely what action, event, or document did or would -15- We also reject Boston Car's argument that even if American Honda's letter of May 5 constituted effective notice, American Honda was required to renew that notice when it extended the projected opening date for the Revere dealership from January 1989 to January 1990. American Honda never abandoned its plan to establish a Revere point, nor was Carney ever given to understand that the Revere point would be dropped. The existing dealers were already on notice and had been given an opportunity, which they exercised, to protest the new dealership. Requiring republication of the notice when opening of that dealership was delayed would serve no purpose. This case is readily distinguishable from Smith's _______ Cycles, Inc. v. Alexander, 219 S.E.2d 282 (N.C. App. 1975), _________________________ upon which Boston Car also relies. In Smith's Cycles, the ______________ distributor served notice that it would grant a new dealership on or before a certain date. When that date ______________ passed, the notice lapsed by its own terms, and existing dealers were entitled to assume that no new dealership was ____________________ constitute the grant of a franchise to York within the meaning of Chapter 93B. We hold only that issuance of the LOI was not the grant of a franchise, and that American Honda's letter of May 5 satisfied its obligation to provide notice of its intention to grant a franchise. Accordingly, Boston Car's failure to comply with the notice of intent to sue provision of Chapter 93B bars its claim under that chapter. -16- contemplated. The distributor could not, therefore, rely on the earlier notice when it opened a new dealership more than a year after the date stated. By contrast, American Honda's notice of intent to grant a Revere franchise stated that the new franchise would open no earlier than January 1, 1989. It did not state or imply _______________ that if the new dealership did not open on that date it should be considered abandoned. The delays in opening the Revere dealership did not require republication of the notice. For the foregoing reasons, the judgment of the district court is Affirmed. _________ -17-