Fremont-Smith, J.
This suit involves a challenge by the plaintiff, a Honda dealer, to the proposed location by American Honda Motor Co. (“American Honda”) of an additional Honda dealership within the plaintiffs “relevant market,” as defined by Mass. G.L.c. 93B. The case was tried without a jury September 16, 1994— September 28, 1994. Based upon all of the credible evidence, the Court makes the following findings, rulings and judgment with respect to liability on Count I of the amended complaint. The other counts of the complaint and the question of any damages pursuant to G.L.c. 93B were previously bifurcated and are reserved for a subsequent trial, if necessary.
FINDINGS AND RULINGS
For many years, plaintiff was a Honda dealer located in Worcester.
Beginning in the mid-1980s, American Honda repeatedly urged plaintiff to relocate due, in part, to the deterioration of the neighborhood and the inadequacy of the facilities.
In the fall of 1991, the owner-operators of plaintiff dealership, Richard and Barry Lundgren, located new facilities at 525 Washington Street, Auburn, Massachusetts (“Auburn facilities”). The facilities consisted of a four-acre tract with a 25,000-square-foot building which was well-suited, with some retrofitting, to be a motor vehicle dealership facility. The price of the Auburn facilities was $925,000, while the cost of retrofitting the building was $150,000, to be borne by plaintiff and Richard and guaranteed by the plaintiff . corporation. Auburn was, at that time, one of American Honda’s “open points,” i.e. a location in which it desired to locate a dealership.
On September 21, 1991, the Lundgrens entered into a Purchase and Sale agreement for the new facility, conditional on American Honda’s approval, and in late September 1991, Barry advised defendant’s Zone Sales Manager, Francis O’Neill,[1] that he and his father had located an appropriate facility. A meeting was held at the new facility on October 4, 1991, between Richard, Barry, O’Neill and another employee of American Honda. The group toured the facility and discussed the changes that would be necessary to make them suitable as an auto dealership. O’Neill expressed interest and satisfaction with the facility, which was large, contemporary and located on Route 20, in Auburn, at the confluence of Routes 290, 395 and the Massachusetts Turnpike.
At lunch later the same day, O’Neill announced that two points in Worcester County were open, Auburn and Westborough, and that he was seriously considering filling the open point in Westborough.[2] The Lundgrens were aghast and objected.[3] The only reasons O’Neill gave were that Honda sales were lagging behind Toyota in Worcester County and that Toyota had six dealers in Worcester County to Honda’s two. He then said that if he were to approve Lundgren’s relocation to the Auburn facility, he would like a letter indicating that Lundgren would not protest, pursuant to G.L.c. 93B, a new dealership in Westborough. The Lundgrens angrily demurred, and O’Neill departed.
O’Neill then granted conditional approval of the Auburn site by a letter dated October 16, 1991, in which he again asked for a no-protest letter. Barry telephoned O’Neill and said that he would not provide American Honda with a no-protest letter and that approval of his relocation should not be made contingent thereon. On November 14, 1991, O’Neill issued formal approval of the move, not made conditional on a no-protest letter, but stated that American Honda did not thereby surrender its plans to install a dealer in Westborough. Plaintiff then proceeded, in March 1992, to relocate its operations to the Auburn location. While it entered into a new dealership agreement with American Honda which permitted it to sell cars from the Auburn location, plaintiff did not change its corporate identify, ownership, management, business or its American Honda dealer code identification.
On February 12, 1992, American Honda issued a formal notice to plaintiff under Mass. G.L.c. 93B, §4(3)(1), of its intent to appoint Roger Groux[4] as a dealer in Westborough, Massachusetts, on and after May 1,1992. O’Neill metwith the Lundgrens and again asked for a no-protest letter, but by letter dated March 5, 1992, plaintiff formally advised American Honda in accordance with the provisions of Mass. G.L.c. 93B, §4(3)(1), that it objected to the proposed appointment of a Honda dealer in Westborough, and that it intended to petition the Superior Court to determine whether such proposed appointment was arbitrary.
Relevant Market
The first question for the Court is whether the plaintiff has standing to protest the proposed new dealership under G.L.c. 93B, which requires that the proposed new dealership be located within the “relevant market” of the plaintiff. The statute defines the relevant market area of a protesting dealer as follows:
the more narrowly defined and circumscribed geographical area immediately surrounding its existing dealer location within which it obtained, during the *573 period of time the dealership business has been operated from said location or the three-year period immediately preceding the date of said notice of intent to grant or enter into an additional franchise or selling agreement, whichever is the lesser, at least two-thirds of (i) its retail sales of new motor vehicles of said line make or (ii) its retail service sales, regardless of whether its franchise or selling agreement delineates or establishes a specific area of responsibility . . .
M.G.L.c. 93B, §4(3)(1).
As the plaintiff had not yet moved from its Worcester location when the February 12,1992 notice was given, its “existing location” was Worcester and the “relevant market,” for purposes of this lawsuit, is to be measured from that location.
Defendant contends, by its move to Auburn on March 26, 1992 (about tweniy-one days after it had protested the new location) plaintiff waived its right to protest the proposed dealership in Westborough, because it was required to file a new protest once its new dealership agreement and its move to the Auburn location was effective on March 26-27, 1992. The Court rejects this interpretation of the statute in the context of this case. Here, American Honda had already approved the plaintiffs relocation, which was immanent when it issued its February 12, 1992 notice to the plaintiff, so that both parties were clearly contemplating plaintiffs new location at the time of American Honda’s notice and of plaintiffs protest. Plaintiff, moreover, could not legally have waited until after it had moved on March 26-27, to give its notice of protest, since G.L.c. 93B(4)(1) required it to do so within thirty days of American Honda’s notice, i.e. on or before March 12, 1992. Accordingly, under the circumstances, plaintiffs notice of protest was effective with respect to the Auburn location. See Boston Car Co. v. Acura Auto, 971 F.2d 811 (1st Cir. 1992) at 817-18.
The next question for the Court is whether plaintiff has satisfied its burden of proving it has standing, i.e. that the proposed Westborough dealership was located within plaintiffs “relevant market,” as defined by the statute. The Court concludes that plaintiff has met its burden.
Relevant market area is defined by the statute as “the more narrowly defined and circumscribed geographic area immediately surrounding its existing dealer location within which it obtained, during the period of time the dealership business has been operated from said location or the three-year period immediately preceding the date of said notice of intent to grant or enter into an additional franchise or selling agreement, whichever is the lesser, at least two-thirds of (i) its retail sales of new motor vehicles of said line make or (ii) its retail service sales . . .’’
The statute is silent as to whether “sales of new motor vehicles” or sales of “service sales" should be measured in terms of number of sold units, in terms of dollar volume of sales, or both.[5] Here, plaintiff tallied, for the three-year period, its total number of unit sales for cars and total number of repair orders for service, and then plotted the geographic area within which two-thirds of its car sales customers and repair order customers resided.
These computations indicated that the proposed Westborough point was located within plaintiffs “relevant market,”[6] so that, if they are accepted, plaintiff has standing to protest and to pursue this lawsuit.
While conceding that unit volume was an appropriate way to compute plaintiffs “retail sales,” defendant argues that the repair orders should have been totalled to determine their dollar volume in order to delineate the geographic area of its “retail service sales.” There is, however, no reported case that requires a plaintiff to compute his retail service sales in only that particular manner,[7] and 1 accept the plaintiffs computations as providing a reasonably accurate method of delineating its relevant market for retail service sales on the facts of this case.[8] And, while it was never made entirely clear whether service repair orders performed by plaintiff under a new car warranty had been included or excluded from the computations, the Court concludes that their inclusion would not, in any event, render the computations erroneous, as “retail service sales” can reasonably be read to permit the inclusion of such warranty service repairs in the ascertainment of the relevant market.
Arbitrariness
Massachusetts General Laws c. 93B, §4(3)(1) requires that, once the plaintiff has shown that its relevant market area would include the proposed dealership, it must then show by a preponderance of the evidence that the manufacturer’s decision to establish a new dealership was arbitrary. The statute allows the factfinder to consider “all pertinent circumstances,” which may include, but are not limited to the eight factors set forth in subsections (i) through (viii) to determine whether the manufacturer’s decision to establish another dealership was arbitrary.[9]
In determining whether the proposed location of a new dealer was arbitrary, the Court takes note that Mass. G.L.c. 93B was enacted in response to the vast inequities of power between dealers and manufacturers and to long-recognized problems, including that of the coercion of dealers by automobile manufacturers. The Supreme Judicial Court has recognized that “yet another technique with potentialities of unfairness is the granting of new franchises near established ones: having invested in his dealership, a dealer who has displeased the manufacturer, or who simply appears to be dispensable, finds his business turned into a losing venture overnight by the award of a new franchise around the corner, and, it may be, without any practical benefit to, or, indeed, with negative effects on, the buying public.” Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc., 376 Mass. 313, 320 (1978).
*574 Evidence was presented at the trial, which I credit, that the plaintiff had “displeased” American Honda by its insistence that an Acura dealer was “bootlegging" Honda cars (i.e. selling Hondas from an Acura dealership) within plaintiffs market area, and by plaintiffs refusal to allow American Honda to condition its approval of plaintiffs relocation upon a waiver by plaintiff of any protest to American Honda’s proposed new dealership in Westborough.
In Ricky Smith Pontiac, Inc. v. Subaru of New England, 14 Mass.App.Ct. 396, 416 (1982), the Court upheld a finding that the appointment of a new dealership was arbitrary where it had been done “in the absence of careful consideration of relevant data at the time of the appointment," despite the defendant auto manufacturer’s “assembly, after the fact, of information which tended to supportits actions.”The Courtheld that
The judge could have properly considered SNE’s conduct prior to Masabny’s appointment as manifesting indifference to the statute and to the impact that the new dealer would have on existing franchisees. These in turn, in the language of c. 93B, were “pertinent circumstances” in “determining whether (the) proposed appointment was arbitrary.” Id.
Here, the evidence indicated that American Honda had considered a new open point in the same general area, and had discussed it with its Boston market dealers at a dealer meeting in Boston in September 1991. The proposed point, however, was to be in Marlborough and not in Westborough. Although the town of Marlborough is adjacent to the town of Westborough, Marlborough lies in what American Honda’s marketing department has designated as its Boston market area, whereas Westborough lies in defendant’s Worcester market area. The proposed Marlborough location, moreover, was based on a marketing study of the Boston market, and was, as noted, discussed with the Boston-market dealers only. Plaintiff was not invited to the dealer meeting and not provided with a copy of the market study, which did not cover Westborough or the rest of the Worcester market. Defendant’s marketing department had also done a study of the “South Worcester market,” which similarly did not cover Westborough, and which had suggested possible additional dealer points in southern Worcester County, but not in Westborough.
In short, while O’Neill and other witnesses for defendant, including its market expert, have strived diligently to assemble “after the fact" market data[10] in an attempt to support its action, the Court concludes that the intended creation of a new dealership in Westborough was not based on any careful consideration of relevant market data at the time, and was hence arbitrary.[11]
JUDGMENT
Based on all of the credible evidence, judgment is hereby entered for the plaintiff Richard Lundgren, Incorporated, d/b/a Lundgren Honda against American Honda Motor Co. Inc., on Count I of the Complaint.
*575 (v) whether it is beneficial or injurious to the public welfare for an additional franchise to be established:
(vi) whether the objecting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the market area to be served by the additional franchisee are providing adequate competition and convenient consumer care for the motor vehicles of the same line make owned or operated by residents and persons with places of business in the area to be served by the additional franchisee:
(vii) whether the objecting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the market area to be served by the additional franchisee have adequate motor vehicle sales and service facilities, equipment, vehicle parts and qualified personnel to reasonably provide for the needs of the consumer; and,
(viii) whether the establishment of an additional franchise would increase competition and therefore be in the public interest.

 O’Neill became New England Zone Manager in January 1991, but has recently been placed on administrative leave by American Honda pending the outcome of an investigation of alleged improprieties in connection with his performance of his Zone Manager responsibilities.

 As noted below, American Honda had, for some time, designated an “open point" in Marlborough, which was within American Honda’s Boston market area rather than the Worcester market area, and O’Neill had participated in the decision to relocate that open point to Westborough.

 Barry had previously been told by a Toyota dealer, in August 1991, that American Honda intended to put a dealer in Westborough, approximately eight miles from the Auburn facility, but when he had immediately called O’Neill and asked whether the rumor was true, O’Neill had denied any intention to put a dealer in Westborough and had assured him that if he did, the Lundgrens would be the first to know.

 Roger Groux owns Honda dealerships in North Reading and in Peabody, Massachusetts and in Stratton, New Hampshire.

 In determining a party’s share of a relevant market for purposes of the Sherman Act, federal courts have permitted either or both methods to be employed, depending upon the reasonably available evidence.

 While not strictly relevant to a determination of plaintiffs relevant market from its “existing location” (Worcester) when American Honda’s notice of intent was received, plaintiff also plotted its “relevant market” for its new location after the move to Auburn, and found that Westborough was also within its relevant market so computed. Marlborough, however, was found to be outside the relevant market for plaintiffs Worcester location and for its new Auburn location.

 In an unreported decision, the Massachusetts Federal District Court did reject proof of a retail service sales market area by way of total repair orders, in Porter Chevrolet, Inc. v. American Honda Motor Co., Inc. (D.Mass. 1983) (slip opinion, May 31, 1983, McNaught, J.). There, however, the Court did not hold that it was legally impermissible to compute the relevant market by tallying repair orders. It held only that, on the particular evidence in that case, the repair order computation was unreliable and not credible and no evidence of dollar sales had been provided either.

 Nor do I credit defendant’s expert’s computations and delineation showing Westborough to be outside of plaintiffs relevant market if measured from Auburn. Defendant’s expert admitted, on cross-examination, that he had misplaced plaintiffs Auburn location on his plotting map, and that he was not sure that Westborough would lie outside of the relevant market had he plotted the geographic area from plaintiffs correct Auburn location.

 These factors are:
(i) whether the establishment of such additional franchise appeared to be warranted by economic and marketing conditions including anticipated future changes:
(ii) the retail sales and service business transacted by the objecting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the market area to be served by the additional franchisee during the three-year period immediately preceding such notice as compared to the business available to them:
(iii) the investment necessarily made and obligations incurred by the objecting motor vehicle dealer or dealers of the same line make with a place of business in the market area to be served by the additional franchisee to perform their obligations under existing franchises or selling agreements: *575 (iv) the permanency of the investment of the objecting motor vehicle dealer or dealers and other motor vehicle dealers of the same line make with a place of business in the market area to be served by the additional franchisee:

 The Court does not find even this “after the fact" market data justifies the location of a new dealership in Westborough. While the marketing evidence may indicate the desirability of additional Honda dealers in the Boston market area, and particularly in southern Worcester County, no marketing justification was provided for the location of a new dealership within plaintiffs relevant market.

 The court does not credit O’Neill’s testimony that he carefully examined detailed market data in deciding to recommend a relocation of the proposed point from Marlborough to Westborough. Rather, the change in location appears to have been the result of a personal friendship and mutual favors exchanged between the proposed dealer (Roger Groux) and James Moynihan (National Market Representative for American Honda), and of an effort to please Groux (who preferred an available site in Westborough). For instance, in the course of these conversations, Moynihan and Groux admittedly discussed the possibility of Groux’s employment of Moynihan as a consultant after Moynihan retired in 1993.