57 F.3d 1061
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 TIDEMARK BANK FOR SAVINGS, F.S.B., Plaintiff-Appellant,
v.
Peter R. MORRIS, an Indiviidual and Marshall and Stevens
Incorporated, Defendants-Appellees.
 No. 94-1598.
 United States Court of Appeals,
First Circuit.
 June 19, 1995.
 
 1
 Frederic N. Halstrom, with whom Halstrom Law Offices, PC was on brief for appellant.
 
 
 2
 Joseph P. Musacchio, with whom Stephen W. Sutton and Melick & Porter were on brief for appellee Marshal and Stevens, Inc.
 
 
 3
 D.Mass.
 
 
 4
 AFFIRMED.
 
 
 5
 Before TORRUELLA, Chief Judge, BOUDIN, Circuit Judge, and BARBADORO,* District Judge.
 
 
 6
 BARBADORO, District Judge.
 
 
 7
 The plaintiff, Tidemark Bank for Savings, F.S.B. ("Tidemark"),[1] appeals from summary judgment granted in favor of the defendant, Marshall and Stevens, Inc. Tidemark argues that the district court erred in its choice-of-law analysis and, as a result, applied the wrong substantive legal standard. Finding no error in the choice of law, we affirm the district court's order.
 
 I. BACKGROUND
 
 8
 In 1985, Peter Morris received a $2 million construction loan from Tidemark to build a summer vacation house on Martha's Vineyard in Massachusetts. Morris decided to refinance the loan in 1987, and this time Tidemark agreed to loan Morris $3.5 million subject to several conditions, including a requirement that Morris have the property appraised. Morris engaged Marshall and Stevens to prepare the appraisal, which valued the property at $5.5 million. Tidemark then made the loan in reliance on the appraisal and obtained a first mortgage on the Martha's Vineyard property. Morris subsequently defaulted. After foreclosure, Tidemark sold the property at a substantial loss.
 
 
 9
 Tidemark is a Virginia savings institution with its principle place of business in Newport News, Virginia. Marshall and Stevens is an Illinois corporation with its principle place of business in Des Plaines, Illinois. Morris is an Illinois resident. Tidemark filed its complaint against Marshall and Stevens in the district of Massachusetts alleging negligence, negligent misrepresentation, and breach of contract.[2] The district court invoked Massachusetts' choice-of-law rules and determined that the substantive law of Virginia applied to Tidemark's negligence and negligent misrepresentation claims, while Illinois law applied to the contract claim. It then granted Marshall and Stevens' motion for summary judgment with respect to all three claims.
 
 
 10
 Tidemark argues on appeal that the district court misinterpreted Massachusetts' choice-of-law rules.[3] As a result, Tidemark contends that the district court erroneously judged its negligence and negligent misrepresentation claims under Virginia law, rather than Massachusetts law.[4] We review the district court's resolution of the choice-of-law issue de novo. CPC Int'l v. Northbrook Excess & Surplus Ins., Co., 46 F.3d 1211, 1214 (1st Cir. 1995).
 
 II. DISCUSSION
 
 11
 In diversity of citizenship cases, we use the forum state's choice-of-law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); American Title Ins. Co. v. East West Fin. Corp., 959 F.2d 345, 348 (1st Cir. 1992). Accordingly, we are guided in our analysis by the applicable decisions of the Massachusetts Supreme Judicial Court ("SJC").[5]
 
 
 12
 Massachusetts eschews any particular choice-of-law doctrine and instead employs a "functional approach" to choice of law. Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 834 (Mass. 1994). A court using this approach must consider "various choice- influencing considerations, including those provided in the Restatement (Second) of Conflict of Laws (1971), and those suggested by various commentators." Id. (citation omitted). The SJC's most recent decisions on the subject suggest that the first step in this process is to identify and apply the Restatement sections that are most analogous to the particular issue in dispute. See, e.g., New England Tel. & Tel. Co. v. Gourdeau Constr. Co., 647 N.E.2d 42, 44-45 (Mass. 1995); Cosme, 632 N.E.2d at 834-36; Travenol Labs., Inc. v. Zotal, Ltd., 474 N.E.2d 1070, 1073 (Mass. 1985); Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662, 668 (1985). The results obtained by using the most analogous Restatement sections are then evaluated in light of the more general choice-influencing considerations described in Sec. 6 of the Restatement and other similar sources.[6] Cosme, 632 N.E.2d at 834-36. Following this approach, we begin by identifying and applying the section of the Restatement which most closely applies to Tidemark's claims.
 
 A. Restatement Sec. 148(2)
 
 13
 Like the district court, we conclude that Sec. 148(2) of the Restatement is most directly applicable to Tidemark's claims since that section governs choice-of-law issues where the defendant's misrepresentation and the plaintiff's reliance occurred in different states. Restatement (Second) of Conflict of Laws Sec. 148(s) (1971). Section 148(2) lists the following factors that a court should consider in resolving choice-of-law questions in such cases:
 
 
 14
 (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
 
 
 15
 (b) the place where the plaintiff received the representations,
 
 
 16
 (c) the place where the defendant made the representations,
 
 
 17
 (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
 
 
 18
 (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
 
 
 19
 (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.
 
 
 20
 Id. We first consider factors (a), (b), (c), which concern the places where the misrepresentations were made, received, and acted upon.
 
 
 21
 1. The place or places where the misrepresentations were made, received, and acted upon.
 
 
 22
 None of these three factors favors Tidemark's position. Taken chronologically, factor (c), the place where the misrepresentations were made, favors neither Massachusetts nor Virginia law. Although the appraisal was partially prepared in Massachusetts, it was finalized and released from Marshall and Stevens' Illinois office. Factors (b), the place where the misrepresentations were received, and (a), the place where the plaintiff acted in reliance on the misrepresentation, both favor Virginia law since Tidemark received the appraisal, agreed to make the loan, and disbursed the loan proceeds from its Virginia office. The record does not identify the place where the loan closing occurred. However, even if, as Tidemark alleges, the closing had occurred in Massachusetts, that fact is of little significance since Tidemark's claims concern the effect that the appraisal had on its Virginia-based decision to make the loan and its disbursal of the proceeds of the loan from Virginia.
 
 
 23
 2. Other factors.
 
 
 24
 Factor (d), concerning the parties' states of incorporation and places of business, also provides no support for Tidemark's position since Tidemark is a Virginia corporation based in Virginia, and Marshall and Stevens is an Illinois corporation based in Illinois. Even if, as Tidemark argues, Morris should be considered a resident of Massachusetts because he once used the Martha's Vineyard house as a vacation home, his place of residence would be irrelevant because Morris is not a party to the claims at issue here. Factor (f), the place where the plaintiff performed the contract, favors Virginia law since Tidemark performed its primary obligation to Morris under the loan contract by disbursing the loan proceeds from its Virginia office.
 
 
 25
 The only factor that supports Tidemark's position is factor (e), the location of the property which was the subject of the transaction. The section's comment states that this factor "is of particular importance when the subject of the transaction is land." Restatement (Second) of Conflict of Laws Sec. 148 cmt. i. Nevertheless, the location of the property carries comparatively little weight in this case because the alleged misrepresentations did not directly affect the property. Instead, the harm that Tidemark allegedly suffered occurred primarily in Virginia where the decision to make the loan was made.
 
 
 26
 Considering all of the Sec. 148(2) factors and their relative significance, we agree with the district court that, on balance, the Sec. 148(2) factors favor the application of Virginia law.
 
 B. Restatement Sec. 6(2)
 
 27
 Tidemark contends that the district court erred by failing to interpret the results of its Sec. 148(2) analysis in light of the more general choice-influencing considerations described in Sec. 6(2) of the Restatement.[7] As we demonstrate below, consideration of these factors does not cause us to question the district court's conclusion.
 
 
 28
 1. The needs of the interstate system.
 
 
 29
 Neither party has suggested that choosing one state's law over the other would impede the workings of the interstate system. Although the impact of various states' negligence rules on interstate banking and the availability of interstate mortgage transactions might raise concern in some cases, we find no reason to address such issues on the record presented here.
 
 
 30
 2. The relevant policies and relative interest § of Massachusetts and Virginia in the negligence claims.
 
 
 31
 Virginia plainly has a significant interest in litigation involving a Virginia plaintiff. Virginia has chosen not to recognize tort claims to recover purely economic loss for negligently supplied misinformation absent privity between the parties. Ward, 435 S.E.2d at 631-32. Instead, under Virginia law, a plaintiff may recover economic losses caused by the failure of contractual duties only in a contract action. Id. The purpose of Virginia's "economic loss rule" is "to preserve the bedrock principle that contract damages be limited to those 'within the contemplation and control of the parties in framing their agreement.' " Richmond v. Madison Management Group, Inc., 918 F.2d 438, 446 (4th Cir. 1990) (quoting Kamlar Corp. v. Haley, 299 S.E.2d 514, 517 (Va. 1983)).
 
 
 32
 Massachusetts, on the other hand, has little interest in this case. Although Massachusetts' policy would favor compensating Massachusetts plaintiffs and holding Massachusetts defendants accountable under its own law, see Cosme, 632 N.E.2d at 836, none of the parties are Massachusetts citizens or corporations. Further, although the appraised property is located in Massachusetts, the transaction did not directly affect the property, and the parties no longer own or have any connection with the property. Thus, Massachusetts has minimal interest in the parties and the outcome of this case.
 
 
 33
 3. Protection of justified expectations.
 
 
 34
 This factor is insignificant in negligence actions where the parties probably acted without considering the significance of the applicable rule of law. Restatement (Second) of Conflict of Laws Sec. 6 cmt. g. Tidemark contends, however, that it expected that Massachusetts law would apply to all actions related to the loan because the mortgage document contained a choice-of-law clause specifying that the mortgage would be governed by Massachusetts law. Marshall and Stevens was not a party to the mortgage, and Tidemark's claims are not based on the mortgage agreement. If Tidemark expected Massachusetts law to apply to potential negligence claims against an appraiser based on the mortgage agreement, its expectation was unjustified.
 
 
 35
 4. Basic policies underlying the field of law.
 
 
 36
 The policy supporting tort recovery for negligently supplied information is to encourage honesty and competence in the undertaking. See Restatement (Second) of Torts Sec. 552 cmt. a (1977). Section 552 of the Restatement (Second) of Torts, pertaining to negligent misrepresentation claims, however, also recognizes the importance of a countervailing policy to limit the scope of liability in light of the potentially broad circulation of misinformation. Id.; see, e.g., Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 881 P.2d 986, 989-90 (Wash. 1994); Matthew S. Steffey, Negligence, Contract and Architects' Liability for Economic Loss, 82 Ky. L.J. 659, 701 (1994); William C. Way, The Problem of Economic Damages: Reconceptualizing the Moorman Doctrine, 1991 U. Ill. L. Rev. 1169, 1186-87 (1991). In light of this countervailing policy, a solid minority of states, including Virginia, require privity in order to maintain a misrepresentation claim. See Bily v. Arthur Young & Co., 834 P.2d 745, 755-59 (Cal. 1992) (finding that approximately nine states require privity while at least seventeen do not). Consequently, the policies underlying this area of law are in conflict and support both states' interpretations.
 
 
 37
 5. Predictability and uniformity of result.
 
 
 38
 Predictability and uniformity of results are of limited significance in negligence actions because parties do not plan their activities in light of the potential legal consequences. Restatement (Second) of Conflict of Laws Sec. 6 cmt. i. However, the Restatement also notes that a choice of law that would further the predictability and uniformity of results would discourage forum shopping. Id. Because Massachusetts joins a majority of states in allowing economic loss suits without privity, application of Massachusetts law arguably might further a uniform legal standard. There is little benefit, however, in encouraging a majority rule over a significant minority view. Thus, this consideration is also inconclusive.
 
 
 39
 6. Ease in determination and application of the law.
 
 
 40
 Because a federal court was the forum here, we give less weight to the ease of applying Massachusetts law over Virginia law. See Allstate Ins. Co. v. Hague, 449 U.S. 302, 326 (1981) (Stevens, J., concurring). Moreover, Virginia law relating to claims for economic loss without privity is well-developed. Thus, we find no obstacles to applying Virginia law in a Massachusetts federal court in this case. Indeed, Tidemark faults the district court's choice but not its application of Virginia law.
 
 
 41
 In summary, the predominance and significance of Virginia's contacts with the parties and relevant occurrences in this case weighs in favor of applying Virginia law. Based on the balance of the appropriate choice-influencing considerations, we hold that the district court's selection of Virginia law was correct.
 
 IV. CONCLUSION
 
 42
 We conclude that the district court did not err in its choice of Virginia law. Because Tidemark does not challenge the district court's interpretation of that law, our review is complete. The district court's judgment in favor of Marshall and Stevens is affirmed.
 
 
 
 *
 Of the District of New Hampshire, sitting by designation
 
 
 [1]
 Newport News Savings Bank was the plaintiff during the proceedings in district court. In August 1993, Tidemark Bank for Savings, F.S.B., was substituted for Newport News Savings Bank. Although the district court refers to the plaintiff as "Newport," we use "Tidemark," which has been the plaintiff's name during the appeal
 
 
 [2]
 Tidemark sued Morris in the same action, but later settled those claims
 
 
 [3]
 We assume for purposes of analysis that a choice must be made between Massachusetts and Virginia law because Tidemark's negligence and negligent misrepresentation claims would have survived if they had been judged under Massachusetts law. Compare Page v. Frazier, 445 N.E.2d 148, 153-54 (Mass. 1983) (recognizing negligence cause of action for misrepresentation to recover purely economic loss despite lack of privity under certain circumstances) and Craig v. Everett M. Brooks Co., 222 N.E.2d 752, 755 (Mass. 1967) (same) with Ward v. Ernst & Young, 435 S.E.2d 628, 631-32 (Va. 1993) (holding that no cause of action exists for negligent misrepresentation absent privity) and Blake Construction Co. v. Alley, 353 S.E.2d 724, 726-27 (Va. 1987) (same)
 
 
 [4]
 Because Tidemark merely alludes to its contract claim, and neither briefed nor argued any issue concerning that claim, we deem it abandoned. Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st Cir. 1990); Niziolek v. Ashe, 694 F.2d 282, 284 (1st Cir. 1982)
 
 
 [5]
 Tidemark challenges our denial of its motion to certify the choice-of-law question to the SJC. Tidemark's failure to seek certification in the district court "considerably weakens" its argument for certification. See Boston Car Co. v. Acura Auto. Div., Am. Honda Motor Co., 971 F.2d 811, 817 n.3 (1st Cir. 1992). Moreover, since sufficient controlling precedent is readily available on the choice-of-law standard, certification is unnecessary. Snow v. Harnischfeger Corp., 12 F.3d 1154, 1161 (1st Cir. 1993), cert. denied, 115 S. Ct. 56 (1994)
 
 
 [6]
 Although the SJC has not limited itself to the Restatement as a source of guidance, we confine our analysis here to the Restatement since the parties do not draw our attention to any additional choice-of-law principles that should effect our analysis
 
 
 [7]
 Section 6 provides the following factors:
 (a) the needs of the interstate and international systems,
 (b) the relevant policies of the forum,
 (c) the relevant policies of other states and the relative interest of those states in the determination of the particular issue
 (d) the protection of justified expectations,
 (e) the basic policies underlying the particular field of law,
 (f) certainty, predictability and uniformity of result, and
 (g) ease in the determination and application of the law to be applied.