**In re Massimo DeNADAI, Debtor.**

No. 00–43430–JBR.

United States Bankruptcy Court,
D. Massachusetts.

March 23, 2001.

**802**

Warren Agin, Swiggart & Agin, P.C., Boston, MA, for Massimo DeNadai.

Christopher Parker, McDermott, Will & Emery, Boston, MA, for Preferred Capital Markets, Inc.

Richard Gottlieb, Boston, MA, for Tali Tomsic, Chapter 7 trustee.

### MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

The issue before the Court for determination is the extent to which Massimo DeNadai, hereinafter the "Debtor," is entitled to exclusions or exemptions in certain stock option contracts he received as a benefit of his employment. On June 21, 2000, the date of the filing of his Chapter 7 bankruptcy petition, the Debtor was employed by Ziff–Davis, Inc. as Vice President of Business Operations. The Debtor had been an employee of Ziff–Davis, Inc. since 1991. As part of the Ziff–Davis. Inc. Amended 1998 Incentive Compensation Plan, hereinafter "the Plan," the Debtor had received option award agreements, hereinafter the "Agreements," to purchase stock in Ziff–Davis, Inc. Stock of Ziff–Davis, Inc. was, at all relevant times, publicly traded on the New York Stock Exchange under the symbol ZD and under ZDZ for its subsidiary known as ZDNet. At the time of the filing the Debtor had exercised his rights under all stock options he had which were exercisable pursuant to the Plan. This dispute is as to those options which the Debtor had been granted at the time of the filing and which would, post-petition, become exercisable, hereinafter "the Options."

### I. Procedural Posture:

The current dispute initially arose when an Objection to the Debtor's claimed exclusions and exemptions was raised by the Debtor's major creditor, Preferred Capital Markets, Inc., hereinafter "Preferred." The Chapter 7 Trustee, hereinafter the "Trustee," objected to the same claims of exclusion/exemption. Preferred filed a "Motion for Summary Judgment Sustaining Objections to Debtor's Exemption and Exclusion Claims" and Memorandum in Support thereof. At a preliminary hearing concerning the aforementioned objections,

all parties agreed that all of the issues should be consolidated with Preferred's Motion for Summary Judgment for determination. All parties presented oral argument and briefs. The Debtor objected to the Motion for Summary Judgment and filed a Cross Motion for Summary Judgment supported by his own affidavit. After pre-hearing submissions were due, the Debtor attempted to supplement his Cross Motion for Summary Judgment by filing a "Motion for Leave to File Affidavit of Daniel L. Rosensweig," hereinafter referred to generally as the "Rosensweig Affidavit". Preferred objected to the Court's consideration of the Rosensweig Affidavit based upon the parol evidence rule.

Following oral argument the Court took these matters under advisement to determine the extent to which the Debtor is entitled to the claimed exclusions/exemptions. The Court must also decide whether the Rosensweig affidavit will be considered in support of the Debtor's arguments.

## II. Summary Judgment Standard:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opponent of a properly focused Rule 56 motion must demonstrate, by competent evidence, the existence of a triable issue which is both genuine and material to its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *United States v. One Parcel of Real Property, Etc. (Great Harbor Neck)*, 960 F.2d

200, 204 (1st Cir.1992). "In the same context, 'material' means that the fact is one susceptible of altering the outcome of the litigation." *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir.1992). This Court must view the record in the light most favorable to the party opposing summary judgment, making all reasonable inferences in that party's favor. *Newport Plaza Assoc., L.P., v. Durfee Attleboro Bank*, 985 F.2d 640, 643 (1st Cir.1993), *see also Rivera–Muriente*, 959 F.2d at 352; *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

In this case the parties have agreed to have the issues determined on summary judgment as all parties agree that there are no issues of material fact and the determination is solely one of law. Tr., December 21, 2000, pg. 45–46. The one potential issue of fact raised by the parties concerns the content of a supplemental affidavit, the Rosensweig Affidavit, submitted by the Debtor, albeit late, in support of his various arguments.

### A. The Rosensweig Affidavit:

■ The affidavit of Daniel L. Rosensweig, the CEO of ZDNet and a director of Ziff–Davis, Inc. was offered by the Debtor as evidence purporting to show "when Ziff–Davis, Inc. considers a stock option to be earned." *Debtor's Motion for Leave to File Affidavit of Daniel L. Rosensweig*, page one. The Court finds that the intent of the Plan and Agreements are plain on the face of the documents. *Debtor's Response to Objections to Exemption*, Exhibits C through G. Each Agreement contains a clause incorporating the Plan and determining that any inconsistencies, conflicts or omissions shall be governed by the Plan. *Debtor's Response to Objections to Exemption*, Exhibits C through G. The objection to the admission of the Rosensweig Affidavit was made under the parol evidence rule, supported by citations to the law of Massachusetts (where this Chapter 7 is pending) and Delaware (the state of incorporation of Ziff–Davis, Inc.). Neither

the Trustee nor the Debtor took a position with regard to what state's law controls the parol evidence rule issue. Although the Plan does not contain a choice of law provision, each Agreement does, and each selects the law of the State of New York as governing with regard to interpretation of the Agreement(s).

■ The law with regard to parol evidence in Massachusetts, Delaware, and New York is largely the same: extrinsic evidence is generally prohibited where a complete contract is unambiguous. *In re New Era Packaging, Inc.*, 186 B.R. 329, 334 (Bankr.D.Mass.1995); *Boston Car Co. v. Acura Auto. Div., Am. Honda Motor Co.*, 971 F.2d 811, 815 (1st Cir.1992); *Wayland Inv. Fund, LLC, v. Millenium Seacarriers, Inc.*, 111 F.Supp.2d 450, 454 (S.D.N.Y.2000); *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del.1997).

The Rosensweig Affidavit was filed after the deadline set by the Court, which alone would be enough to deny its consideration. The Court notes that despite the fact that the content of the Rosensweig Affidavit would be inadmissible under the parol evidence rule at trial, the limited information contained therein is not, even when construed most beneficially to the Debtor, determinative of the outcome of any part of this decision. The content of the Rosensweig Affidavit does not create a material issue of fact determinative of this matter in favor of any party. On the basis of the parol evidence rule, the Rosensweig Affidavit will not be considered in the determination of this matter insofar as the Court finds that the Plan and Agreements are complete and unambiguous on their face, *New Era Packaging*, 186 B.R. at 334; *Boston Car Co.*, 971 F.2d at 815; *Wayland Investment Fund, LLC*, 111 F.Supp.2d at 450; *Eagle Indus., Inc.*, 702 A.2d at 1232, and therefore the Rosensweig Affidavit

cannot establish the existence of a material issue of fact to be resolved at trial. The Court further finds it would be inappropriate to allow the Debtor to submit a late affidavit containing terms contrary to the written terms of the Plan and Agreements when those terms would not be admitted at trial. For all of the foregoing reasons the Debtor's Motion for Leave to file Affidavit of Daniel L. Rosensweig is denied.

## III. Discussion:

### A. The Debtor's Residence:

Objections to the Debtor's exemptions in his residence were initially raised by the Trustee and Preferred, but it oral argument all parties acknowledged that the issues may not be ripe for determination. The Debtor's home was valued on his schedules at $230,000.00, but acknowledged by the parties at oral argument to likely be $285,000.00. Due to a first mortgage in the approximate amount of $178,000.00, the equity in the home is in the amount of approximately $107,000.00. The Debtor has elected the Massachusetts state exemptions pursuant to 11 U.S C. § 522(b)(2) and filed a Certificate of Homestead (pursuant to Mass.Gen.Laws ch. 188, § 1) prior to filing bankruptcy. Therefore, the Debtor has claimed $100,000.00 as exempt equity in his home.[1] The Objections to the Debtor's claim of exemption in his home concern the Debtor's additional claim of exemption by virtue of his residence being held as a tenancy by the entirety. Insofar as Trustee's Counsel indicated at oral argument that he would be conducting an appraisal to ensure that Debtor's valuation of the real property was correct, but the appraisal had not yet commissioned, the Court has no evidence before it upon which to determine either the value of the home or whether there is non-exempt equity in the Debtor's residence. The Court, therefore, makes

---

1. Although the Massachusetts homestead was increased to $300,000. in 2001, the Debtor's exemption was properly taken in the amount applicable at the time of the filing, $100,000.

See Mass.Gen.Laws ch. 188, § 1 as amended by 2000 Mass.Legis.Serv. Ch. 174 (S.B. 782) (WEST).

no findings with regard to the Debtor's equity in his residence.

## B. Stock Options:

Had this dispute actually been resolved on the date of the filing there would have been little to argue about. An unforeseen occurrence took place on October 17, 2000 (119 days after the filing) when Ziff–Davis, Inc. was acquired by an entity known as CNET Networks, Inc., hereinafter "CNET." The Debtor was informed of the pending acquisition in late June 2000, after the filing of his bankruptcy petition. The merger was announced publicly in July 2000. It is undisputed that upon completion of the acquisition, ownership by CNET increased the overall value of Ziff–Davis, Inc. stock and the terms of the Agreements provided for accelerated exercisability of all Ziff–Davis, Inc. employee stock options. All parties agree that the merger of Ziff–Davis, Inc. into CNET substantially increased the total value of Options. The parties, however, disagree whether the Options are even property of the estate and, if any are property of the estate, how they should be valued within the bankruptcy estate.

The Debtor makes various arguments for exclusion/exemption of the Options. First, the Debtor claims the Options are fruits of post-petition labor by the Debtor and are therefore not property of the estate. In the alternative, the Debtor claims the Plan and Agreements created a trust agreement between Ziff–Davis, Inc. and the Debtor and that the trust res is exempt. Finally, as a third alternative argument, the Debtor claims that the Options are akin to an Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001 et seq., (hereinafter "ERISA"), qualified pension plan and are therefore

exempt. The Court will consider each of the Debtor's arguments in turn.

### 1. *Property of the Estate:*

■ The Trustee and Preferred refer at times in their pleadings to the Options as contract rights. Although the Options may be viewed as contract rights, the Debtor acknowledges the Options are at least a form of equity grant. *In re Allen,* 226 B.R. 857 at 865 (Bankr.N.D.Ill.1998). Regardless of whether the Options are classified as contract rights or equity grants, it is clear that they amount to rights to purchase company stock at a given time at a strike price and the Court finds that the company's purpose in issuing the Options to the Debtor was; (i) to provide him with additional compensation that may also yield some tax benefit, and (ii) to provide him with a benefit which would encourage him to continue his employment relationship with the company.

The Debtor makes much of the issue of when the Options became exercisable. It is clear, however, that the Debtor's property right to the Options existed at the time of the filing and therefore whatever rights the Debtor had at the time of filing became the rights of the bankruptcy estate. *In re Allen,* 226 B.R. 857, 864.[2] To the extent that such rights are nonexempt they become assets from which the Trustee may satisfy the Debtor's creditors. 11 U.S.C. § 541(a)(1)–(7) governs what is property of a bankruptcy estate and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Debtor acknowledges the broad scope of § 541(a), but notes correctly that the estate's interest cannot exceed that which the Debtor had on the date of filing. *Debtor's Response to Objections to Exemption,* pg. 9 of 18. In addition, 11

**2.** The Court notes that another court has determined issues of federal exemption with regard to stock options. *Stoebner v. Wick (In re Wick),* 256 B.R. 618 (D.Minn.2001). That holding reversed a prior holding in the case. *See Stoebner v. Wick (In re Wick),* 249 B.R.

900 (Bankr.D.Minn.2000). However, this Court does not reach the issues raised by *Wick* as this Debtor has not claimed the federal exemptions, but has instead elected the state exemptions.

U.S.C. § 541(a)(7) specifically includes as property of the estate "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7); *see United States v. Whiting Pools*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2314, 76 L.Ed.2d 515 (1983). Based on the aforementioned Bankruptcy Code sections it is clear that whatever interest the Debtor had in the Options on the date he filed bankruptcy became property of the estate.

■ That determination is hardly dispositive of the issues before the Court. The fact remains that the Options became exercisable after the date of the filing. "A contingency is no bar to property interest becoming property of the bankruptcy estate, even if the contingency requires additional post-petition services, and even if the right to enjoyment of the property may be defeated." *Allen*, 226 B.R. at 865–66. "It makes no difference that the contingency required postpetition services." *Allen*, 226 B.R. at 865. The fact that all of the Options concerned herein became exercisable post-petition (at the time of the acquisition of Ziff–Davis, Inc. by CNET) does not result in their valuation as non-exercisable and thus valueless to the estate.

### 2. *Fruits of Post-petition Labor:*

■ The general purpose of the Bankruptcy Code, specifically Section 541, is to bring all interests of the Debtor into the estate to satisfy two goals: (i) maximize the creditors' recovery, and, (ii) provide the debtor with a fresh start. *Allen*, 226 B.R. at 866 (citing *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 515 15 L.Ed.2d 428 (1966)). In *Allen*, the debtor's circumstances were very similar to those at hand. Allen was employed by Amoco which had granted the debtor stock options as an incentive to stay with the company. *Allen*, 226 B.R. at 859. Allen filed bankruptcy on

January 10, 1997, at which time his stock options were partially exercisable. *Allen*, 226 B.R. at 860. Allen made arguments similar to those herein and took the position that none of his options were property of the estate, while the Chapter 7 Trustee took the position that they all were. *Allen*, 226 B.R. at 861. The *Allen* court applied a quantum meruit analysis and determined that "the realized value of the options is property of the estate only to the extent that the required days [for Mr. Allen to provide services to Amoco in order for the options to be exercisable] had passed pre-petition." *Allen*, 226 B.R. at 867. Having determined that the Options are property of the estate, this Court must turn to the issue the Debtor raises, that all or a portion of the Options are due to his post-petition efforts and are therefore excluded from the estate pursuant to 11 U.S.C. § 541(a)(6).[3] In making this determination the Court found the *Allen* case persuasive. *Allen*, 226 B.R. 857. "This conclusion in is keeping with the language of § 541(a)(6) and reconciles the provision that profits and proceeds of property of the estate are property of the estate with the provision that earnings due to post-petition services of the debtor are not." *Allen*, 226 B.R. at 867. A similar analogy may be drawn to the facts and holding of *In re Taronji*, 174 B.R. 964, 971 (Bankr. N.D.Ill.1994). "However, because the contingency required [the debtor's] postpetition service in order to be satisfied, that portion of the stock related to [the debtor's] postpetition services must be excluded from the estate under the postpetition earnings exception of Section 541(a)(6)." *Taronji*, 174 B.R. at 971.

This Court agrees with the Debtor's argument that post-petition wages that are the result of efforts post-petition are wholly the Debtors, but stock options whose full value is attributable to both pre and

---

**3.** 11 U.S.C § 541(a)(6) states that property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

post-petition efforts are first and foremost property of the estate based upon the Debtor's underlying right to them at the time of filing, with the amount resultant of the Debtor's efforts up to the date of filing due the Chapter 7 Trustee and the balance up to, in this case, October 17, 2000, due the Debtor.[4]

■ This ruling in equity is accordance with the tenet of bankruptcy law that prevents parties from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Butner v. U.S.*, 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961). As property of the estate the Options should be liquidated in the ordinary course by the Chapter 7 Trustee using her business judgment and the proceeds distributed pro rata to the Trustee for the Options' value up to the date of the filing and pro rata to the Debtor for his efforts from the date of the filing to the date on which the Options became fully exercisable, October 17, 2000. The possibility of a reversion to the Debtor is an element that should be considered by the Trustee within her business judgment in liquidating the Options. *In re Kazis*, 257 B.R. 112, 114 (Bankr.D.Mass.2001).

### 3. Trust Argument:

■ The Debtor argues that the Options are excluded from the bankruptcy estate by virtue of § 541(c)(2) of the Bankruptcy Code as an interest in trust.[5] The term "trust" is not defined by the Bankruptcy Code, but under Massachusetts law a trust exists only where there is an intent to create a trust, with specific assets being placed as the trust res with identified beneficiaries. *In re Curran*, 157 B.R. 500

(Bankr.D.Mass.1993). The Court found no evidence of such intent here. In fact, a debtor similarly situated has previously made this argument and that court rejected such claims as well. *Taronji*, 174 B.R. at 968. This Court agrees. The trust argument concerning what is clearly, and acknowledged by the Debtor, an employee employer relationship, is a stretch. "The interest of Jaime Taronji under the Tenneco Plan was not an equitable interest in a trust. Rather, since the Tenneco Plan provided Taronji with an additional form of compensation for his services, Taronji's interest under the plan was a set of legally enforceable contract rights." *Taronji*, 174 B.R. at 968. Moreover, the trust language of § 541(c)(2) has been interpreted by the United States Supreme Court in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), with regard to ERISA qualified plans.

### 4. Incentive Savings Options Analyzed with regard to ERISA:

■ As an alternative argument the Debtor attempts to demonstrate that some of the Options, those called Incentive Savings Options, (hereinafter "ISOs"), are akin to an ERISA qualified pension plan and should therefore come under the control of the United States Supreme Court's decision in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242. Based upon this Court's lack of finding a trust relationship in the Plan and Agreements thereunder which have been submitted to the Court, the holding of *Patterson v. Shumate* does not apply here. In fact, Debtor's counsel acknowledged that he found no case law to support such a proposition. Tr., December 21, 2000, pg. 43. This Court's own

---

**4.** Under the terms of the Plan and Agreements the merger into CNET eliminated all restrictions on the exercisability of the Options, including the need for the Debtor to be employed by the company beyond the date of the merger. See *Debtor's Response to Objections to Exemption*, Exhibits C through G.

**5.** 11 U.S.C. § 541(c)(2) excludes from the estate property that is subject to "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

research likewise reveals no case law support for Debtor's theory.

The Debtor's claim of exclusion pursuant to Mass.Gen.Laws ch. 235, § 34A concerning pension plans and retirement benefits attempts to extend the argument under the law of the Commonwealth of Massachusetts, but is equally unpersuasive for the same reasons set forth herein.[6] The Options do not fall into any of the categories defined by Mass.Gen.Laws ch. 235, § 34A, nor do they amount to property excluded from the estate under 11 U.S.C. § 541(c)(2). The Massachusetts legislature has clearly listed the categories of property which are exempt and certainly could have specifically included stock options in Mass.Gen.Laws ch. 235, § 34A had it desired so to do.

There are no facts in dispute which would result in this Court attributing the qualities of an ERISA plan to the Debtor's ISOs. The Supreme Court determined that ERISA qualified pension plans were excluded from property of the bankruptcy estate under § 541(c)(2) because the phrase "applicable nonbankruptcy law" includes federal nonbankruptcy law which "gives full and appropriate effect to ERISA's goal of protecting pension benefits." *Patterson v. Shumate*, 504 U.S. 753, 765, 112 S.Ct. 2242. Although some of the Debtor's Options originally contained restrictions on alienation, there is no evidence that those restrictions were for trust purposes akin to the concerns surrounding, and protections of, retirement benefits. Furthermore, all such restrictions became inoperative as of tee merger with CNET.

The Court finds that the Plan and Agreements suggest that the restrictions

favor tax benefits and are not veiled spendthrift trusts. It has been held that tax language cannot be construed such that it operates to transform a non-trust IRA custodial account into a trust so that it may be excluded under 11 U.S.C. § 541(c)(2). *In re Fulton*, 240 B.R. 854 (Bankr.W.D.Pa.1999). That analogy is applicable here. Finally, the distinction the Debtor argues based upon a post-petition change of tax status to some of the Options is irrelevant to this decision.

## IV. Conclusion:

For all of the foregoing reasons, having reviewed the pleadings and arguments of counsel in depth and determined that the Options did not amount to a trust, are not akin to an ERISA qualified benefit plan, and are not excluded or exempted from the estate for any of the other reasons stated in pleadings, memoranda or at argument by the Debtor, the Court hereby finds that the Options in question are property of the estate and the Trustee may liquidate them in the ordinary course of the Debtor's Chapter 7 case using her business judgment in accordance with the goals of (i) maximizing the creditors' recovery, and; (ii) providing the Debtor with a fresh start. The Court hereby further finds that the ultimate realized value of the Options is property of the estate only to the extent that the percentage of required days which the Debtor worked pre-petition to effectuate exercise of the Options had passed pre-petition. The Debtor is entitled to apportionment for his post-petition employment which enabled the Options to still be of value to the estate. That time period runs from the date of the filing, June 21, 2000, through October 17, 2000,

---

**6.** The Court also notes the Debtor's claim that the Options are akin to bank accounts with the protection afforded thereto under M.G.L.A. chapter 235 § 34(15). There is simply no evidence or reasonable explanation in the record supporting that claim. Such exemption would be *de minimis* as it is limited by the statute to one hundred and twenty-five dollars ($125.00). Mass.Gen.Laws ch. 235, § 34(15).

The Debtor's additional claim, that the Options are not attachable under the law of the Commonwealth of Massachusetts is inapposite. Mass.Gen.Laws ch. 223, § 71 concerns attachment as a collection action to satisfy money damages. This property is within the exclusive jurisdiction of the Bankruptcy Court and is not subject to a state court collection action.

the effective date of the merger into CNET and the date upon which, under the terms of the Debtor's Plan and Agreements, all Options became exercisable; that period amounts to one hundred and nineteen (119) days. A calculation of the estate's percentages is attached hereto as *Exhibit A;* the balance belongs to the Debtor. The Trustee should, in accordance with the aforementioned principles, bring this matter to a close at the highest and best price for the Options concerned herein, which will benefit both the estate and the Debtor. *In re Kazis,* 257 B.R. 112, 114 (Bankr.D.Mass.2001).

## EXHIBIT A TO MEMORANDUM OF DECISION OF MARCH 23, 2001

| Date Options | ZD ISC @ $6.00 | ZDZ ISO @ $4.29 | ZDZ NQ @ $4.29 |
|---|---|---|---|
| 06/30/2000 | 98.8% (728/737ths) of Options to acquire 500 shares | 98.4% (548/557ths) of Options to acquire 4,105 shares | 98.4% (548/557ths) of Options to acquire 12,-301 shares |
| 09/30/2000 | 87.8% (728/829ths) of Options to acquire 500 shares | | 84.4% *(548/649ths)* of Options to acquire 16,-406 shares |
| 10/17/2000 | 86.1% (728/846ths) of Options to acquire 500 shares | | 82.3% (548/666ths) of Options to acquire 16,-407 shares |
| 10/17/2000 | 86.1% (728/846ths) of Options to acquire 500 shares | 82.3% (548/666ths) of Options to acquire 16,-406 shares | |
| 10/17/2000 | 86.1% (728/846ths) of Options to acquire 500 shares | 82.3% (548/666ths) of Options to acquire 4,105 shares | 82.3% (548/666ths) of Options to acquire 12,-301 shares |
| 10/17/2000 | 86.1% (728/846ths) of Options to acquire 500 shares | | 82.3% (548/666ths) of Options to acquire 36,-406 shares |
| 10/17/2000 | 86.1% (728/846ths) of Options to acquire 500 shares | | 82.3% (548/666ths) of Options to acquire 16,-407 shares |
| 10/17/2000 | 86.1% (728/846ths) of Options to acquire 500 shares | 82.3% (548/666ths) of Options to acquire 16,-406 shares | |
| 10/17/2000 | 86.1% (728/846ths) of Options to acquire 500 shares | 82.3% (548/666ths) of Options to acquire 4,105 shares | 82.3% (548/666ths) of Options to acquire 12,-301 shares |
| 10/37/2000 | 86.1% (728/846ths) of Options to acquire 500 shares | | 82.3% (548/666ths) of Options to acquire 16,-406 shares |
| 10/17/2000 | 86.1% *(728/846ths)* of Options to acquire 500 shares | | 82.3% (548/666ths) Options to acquire 16,407 shares |
| 10/17/2000 | 86.1% (728/846ths) of Options to acquire 500 shares | | |